Nathan R. Sobel, J.
The basic facts underlying the petition are fully stated in a 57-page opinion dated April 15, 1962 (unreported; referred to hereafter as the 1962 opinion). After an extended hearing, I granted the application and vacated the judgment of conviction on the several grounds stated therein.
The Appellate Division, Second Department, reversed both my findings of fact and conclusions of law (21 A D 2d 908). Judge Fuld granted leave to appeal to the Court of Appeals. The contentions of the petitioner Yamin on appeal (unargued as yet) raise important and novel issues of due process under the State and Federal Constitutions.
In the preparation of the appeal additional evidence was brought to petitioner’s attention concerning one of the several issues pending before the Court of Appeals. Petitioner instituted the instant coram nobis proceeding to establish a more favorable record. A hearing has been held (see minutes of November 13, 1964 — 53 pages).
In the instant coram nobis proceeding petitioner Yamin contends that an express promise of leniency was made to the witness Lococo before the trial; that Lococo testified at the trial that no promise of any hind had been made to him; that the prosecutor at the trial remained silent and failed to correct this false testimony.
Before discussing the law applicable to the instant contention it is necessary to relate the instant contention td the 1962 proceedings. The factual background too must be briefly stated.
The witness Lococo was indicted with petitioner Yamin for murder, first degree. After the indictment was obtained, Lococo agreed to turn State’s witness. His case was severed. He was thereafter continuously in the District Attorney’s office actively *409 engaged in the preparation of the case against Yamin. He procured witnesses for the People whose existence was unknown to the prosecutor (see pp. 6-8, 42-43 of 1962 opinion). He and these witnesses gave statements to the District Attorney. On the basis of those statements (not disclosed to the defense) I found that the People had used false testimony at the trial “uncritically and carelessly” (see pp. 53-56 of 1962 opinion). I found Lococo’s trial testimony to be false (p. 52 of 1962 opinion). More particularly I found that Lococo had falsely denied a sentence promise.
In view of the reversal by the Appellate Division on the facts, the only significance and purpose of restating the foregoing is to establish that Lococo was the main witness at the trial upon whose testimony all issues turned. His credibility was therefore a central circumstance.
At the trial Lococo testified that no promise had been made to him in exchange for his testimony. The following took place (p. 49 of 1962 opinion):
“ Q. And what reward do you expect to get for your testimony? A. I didn’t ask for any reward. I don’t know anything. All I came up here and told the truth.
“ Q. You didn’t ask for ány reward? A. I didn’t ask for nothing. Nothing was promised. Nothing was told me.
P. 302: “ Q. Well, what do you expect to get for your testimony here? A. I don’t know. I wasn’t promised anything. Nothing was told me.
P. 304: “Q. Now if you were given a plea to conspiracy to commit murder, you know that would be a misdemeanor, don’t you? A. I do not know the laws * * *.
P. 305: “Q. And don’t you expect to get a misdemeanor plea in this case, although you are indicted for murder in return for your testimony? A. I don’t know anything.”
The trial assistant remained silent during this questioning.
Furthermore when Lococo was asked more specifically whether he had had any conversations with his attorneys (who had permitted him to become a State’s witness) concerning an “ exchange ” of leniency for his co-operation, the District Attorney’s objection that this was a privileged communication between attorney and client was sustained. Parenthetically it is noted that the prosecutor may not invoke the attorney-client privilege; further that the privilege was waived by Lococo when he stated no one had made him a promise.
It is interesting to note that despite Lococo’s strong denial that a “ promise ” was made, defense counsel on cross-exami *410 nation was able to “ predict ” precisely what plea (conspiracy to commit murder) would ultimately be given to Lococo.
For, some weeks later, Lococo was in fact permitted to plead guilty to conspiracy to commit murder. And the prosecutor in his plea statement (Code Grim. Pro., § 342-a) in People v. Lodoco indicated that it was his “ intention ” before the Yamin trial that Lococo receive consideration, viz.: “ and [I] therefore felt it was necessary when Lococo offered to turn state’s witness, that consideration should be extended to him.”
Apart from the frank admission by the prosecutor of a preexisting intention to extend leniency, the after-the-fact-extension of leniency is substantive proof of an understanding that leniency was to be extended.
On the date of Lococo’s sentence (Jan. 31, 1956) the prosecutor addressed the court on behalf of Lococo: “ Lococo with the other material witnesses had come to my office, day after day, morning, noon and night; this witness [Lococo] was able to refresh the memories of the other material witnesses, the facts which they forgot to mention to me, and I felt with this assistance and co-operation we were then able to get a plea of guilty from the real culprit, namely Martin J. Yamin.” (Italics mine.)
As a result of an eloquent plea for leniency, Lococo, a twice-convicted felon then on parole, received a suspended sentence.
Given the fact of leniency, the issue was whether Lococo had been promised “ consideration ”.
In my 1962 opinion (see pp. 48-52) I found:
‘ ‘ The prosecutor should not remain silent and leave the jury with the impression that the witness ‘ didn’t ask for any reward ’ — ‘ I came up here and told the truth ’ when in truth and in fact the prosecution at all times despite no express promise always intended to ask for leniency. * * * The ultimate fact that Lococo received a misdemeanor plea and a suspended sentence is proof of an ‘ implied ’ promise. * * * No experienced Judge will fail to charge that an accomplice witness testifying under similar circumstances is as a matter of law an interested witness because he expects (and invariably receives) a return for his testimony.”
This ruling was predicated of course on the conceded fact that Lococo was not the ordinary accomplice witness but the main witness upon whose credibility the case turned.
The Appellate Division (21 A D 2d 908, 909) ruled however: “We also find that defendant failed to establish: * * * (e) that the People’s witness, Lococo, had been promised a *411 misdemeanor plea by the People or by anyone acting on the People’s behalf. Finally, we conclude as a matter of law that, if the People intend to request consideration for a People’s witness who is the subject of an indictment, the People are not obliged to disclose that intention to the trial court so long as the People, impliedly or expressly, have not entered into such an undertaking with the witness (cf. People v. Mangi, 10 N Y 2d 86; People v. Savvides, 1 N Y 2d 554).’’
The Appellate Division ruled therefore that ‘1 intention ’ ’ coupled with after-the-fact extension of leniency is insufficient as a matter of law to establish an “ implied ” agreement with the witness.
During the preparation of the appeal in which the foregoing ruling was only one of several issues, the petitioner’s counsel ascertained that an “ actual” promise had in fact been made to Lococo by an Assistant District Attorney. He brought this proceeding to establish that fact. In the instant coram nobis hearing (Nov. 13, 1964) that Assistant testified (pp. 5-6): “ Q. In your own words, will you tell us what was said between yourselves concerning the ultimate disposition of Mr. Lococo’s case? A. On several of the occasions that I saw Lococo at the district attorney’s office, I spoke with him. Lococo was brought to our office on many occasions, and he appeared to me to be a very nervous man, and he spoke to me and he was indicted at the time for murder in the first degree, and he, in speaking to me, was always questioning me with respect to what would happen to him; what would be the outcome of this; and I assured him that although I made him no specific.promises and representations, because I knew of none, and I was in no position, I was not permitted to make any representations or promises, but I did assure him, in words or substance, that his cooperation would not go unheeded; that we would do what we could for him to help him later on.
“ Q. Were you present throughout Mr. Yamin’s trial? A. Yes, I was.”
Mr. Lococo also testified at the instant coram nobis hearing and again denied any “promise”. But I find his testimony “internally” inconsistent and in other respects unworthy of credit.
I find as a matter of fact that the testimony of the Assistant District Attorney quoted above is truthful and accurate and amounted to a “ promise ” as a matter of law.
I discuss the applicable law.
*412 THE PROSECUTOR’S DUTY TO DISCLOSE A SENTENCE PROMISE TO A
WITNESS
People v. Savvides (1 N Y 2d 554) is the leading case on disclosure of sentence promise to a material witness. It was recently quoted with approval by the United States Supreme Court (Napue v. Illinois, 360 U. S. 264) as well as other courts Federal and State.
Savvides is not factually significant since it was established that a promise had in fact been made to a material accomplice witness Mantzinos. What is significant is that Judge Fuld spoke in due process terms rather than in the more restricted terms of the availability of coram nobis (cf. People v. Fanning, 300 N. Y. 593).
Judge Fuld said (pp. 556-557):
‘ ‘ The conviction cannot stand. The administration of justice must not only be above reproach, it must also be beyond the suspicion of reproach. The prosecutor should have corrected the trial testimony given by Mantzinos and the impression it created. He should have * * * exposed the lie * * * His failure to do so constitutes ‘ error so fundamental, so substantial, ’ that a verdict of guilt will not be permitted to stand. (People v. Greasy, 236 N. Y. 205, 221.)
“It is of no consequence that the falsehood bore upon the witness ’ credibility rather than directly upon defendant’s guilt. A lie is a lie, no matter what its subject, and, if it is any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth. ’ ’
In his due process approach, Judge Fuld did not speak of “ knowledge ” by the prosecutor of the testimony (used or) permitted to stand uncorrected. For in a due process issue knowledge of falsity is not a consideration. The result to the administration of justice is the same whether the prosecutor knew or did not know the testimony was false. Judge Fuld noted however that “intention” is not important (p. 557): “ That the district attorney’s silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair.”
Nor did Judge Fuld speak in terms of prejudice to the defendant for in a due process issue the court is not concerned with prejudice to a defendant, only to the administration of justice. The sole concern is of course that the perjury (used or) permitted to stand uncorrected be material and not insig *413 nificant or wholly irrelevant to any issue before the court and jury. Thus (p. 557): “Nor does it avail respondent to contend that defendant’s guilt was clearly established or that disclosure would not have changed the verdict. * * * Although, in the view we have taken, it may not be necessary to determine the actual effect of the prosecutor’s conduct * * * [Judge Fuld nevertheless found prejudice.] ” As developed in discussion of the due process issue, infra, it is the harm done to the administration of justice (1) when perjured evidence is used by the People; (2) when perjured evidence is elicited from the People’s witness by the defense and permitted to stand uncorrected (these are the sentence promise cases); and (3) when evidence in the “ possession ” of the prosecution is suppressed, with which the courts are concerned.
In determining the availability of coram nobis, it is true that our State courts have inquired into 1 ‘ knowledge of falsity ’ ’ (People v. Fanning, 300 N. Y. 593, supra) but it has been frequently noted by distinguished commentators (Chief Judge Desmond, Federal-State Habeas Corpus, 49 Amer. Bar Assn. J., 1166; Friendly, J., Federal — State Judicial Conflict, N. Y. L. J. Feb. 11, 1965, p. 4, col. 1) that there exists an area where coram nobis does not meet the due process requirements of Federal habeas corpus.
From a due process viewpoint knowledge of falsity or “knowing and intentional” withholding of evidence is not an essential to relief.
Nor is “ prejudice ” to the defendant as that term is used, for example, on motions for a new trial, a condition precedent to relief. All that is required is that the false testimony or the evidence possessed and withheld be material to some issue (discussed infra).
Although not a due process issue, the holding of the United States Supreme Court in Mesarosh v. United States (352 U. S. 1) expresses the due process viewpoint. Mesarosh had been convicted on the testimony of a Government witness. It was established that the same witness had committed perjury in other trials. The Supreme Court vacated the conviction stating (p. 14): “ Therefore fastidious regard for the honor of the administration of justice requires the Court to make certain that the doing of justice be made so manifest that only irrational or perverse claims of its disregard can be asserted.”
*414 Of course the falsity of the evidence used or permitted to stand uncorrected must be established. In the several “ sentence promises ” cases recently decided in this State that factor only was in issue.
People v. Mangi (10 N Y 2d 86) concerned an actual not an implied promise to a witness Gordon. No proof of a before-the-fact understanding existed. But the court found a ‘ ‘ promise ” from the proceedings after-the-fact. After Mangi’s conviction, the prosecutor addressed the court on behalf of the co-operative witness Gordon (p. 88): “Prior to the trial of [appellant and another] I spoke to Gordon, I believe, on two occasions. At that time, I indicated to him that he would have to be completely frank and that I was in no position to make any promises to him of any kind whatsoever, but I did Íbell him, your Honor, that if he did testify as a People’s witness, that the cooperation would be called to the Court’s attention at the proper time. Gordon relied on my statement to that effect, Judge, and was completely cooperative and did testify as a People’s witness.”
It will be noted that this is precisely the “ promise ” made to Lococo as developed in the instant proceeding (see pp. 5-6, hearing of Nov. 13, 1964).
The Mangi court said (pp. 88-89): “However, we construe what had been said to Gordon as an inducement'to get him to testify favorably for the People, as being in the nature of a promise contrary to Gordon’s denial that any promise had been made. * * * Although this was not a promise that the court would follow the District Attorney’s recommendation, it was a promise of what the District Attorney’s office would do in connection with the imposition of sentence. * * *
it seems that fairness required that such an understanding be brought to the attention of appellant’s jury.” The writ of coram wo Ms was sustained and the judgment vacated.
People v. Carraway (20.A D 2d 861 [1st Dept.]) suggests another test. As in Savvides and Mangi, the witness Green testified in the Carraway trial that no promises had been made. The prosecutor remained silent. But only a short while later on the prosecutor’s recommendation the co-operative witness Green 'was granted leniency. The court had little but the “ after-the-fact ” conduct of the prosecutor before it. The court held that such conduct ‘1 is markedly consistent with the events at the trial”. It ordered a hearing on whether “ any arrangements or understandings, explicit or implicit ”, had existed (p. 862).
*415 Another aspect of this problem was discussed in People v. Parks (20 A D 2d 907 [2d Dept.]). In the Parks case the witness Richardson was made a “ promise ” by the police not the prosecutor. But after the trial of Parks, it was the prosecutor who learning of the promise kept it. The court said (p. 908): “In our opinion, regardless of whether before the Parks trial, an understanding existed between Richards and someone in behalf of the authorities (which should have been revealed to the jury by the prosecutor) that further leniency would be recommended if he (Richards) testified for the People, it was nevertheless the duty of the prosecutor, when Richards testified falsely that no promise had been made to him with respect to his first sentence, to inform the jury of his ‘ deal ’ with the police.”
Parks establishes (as do other cases discussed infra) that the trial prosecutor need not be the one who made the promise. A promise by the police or a different prosecutor is a promise which even if not known to the trial prosecutor violates due process if not revealed.
In People v. Ellington (19 A D 2d 664 [2d Dept.]) there existed no proof of a promise before the Ellington trial to the co-operative witness McCoy. The Judge however on sentencing McCoy stated (p. 655): “ McCoy, you performed; you told the truth * * *. I made you no promise when I took the plea from you, but it was indicated that if you were on the level, it would help you.” This after-the-fact statement of an “ indication ” lead the court to order a hearing.
Thus whether it is an actual promise (Savvides, supra), an inducement “in the nature of a promise” (Mangi, supra), any arrangements or understandings “ explicit or implicit ” (Garraway, supra) or an “indication” of an understanding (Ellington, supra) our appellate courts have held or by ordering a hearing indicated that there must be disclosure to the jury.
To require proof of a promise, understanding or inducement in the same sense as proof of a contract at a trial, would destroy the protection. There need not therefore be an exchange of assurances orally or in writing. As one 5high court recently said in an area of enforcement more important than this — “a knowing wink can mean more than words ” (Esco Corp. v. United States, 340 F. 2d 1000,1007).
It suffices that _ a prosecutor “intends” and the witness “expects”. The “ after-the-fact ” extension of leniency circumstantially establishes the understanding.
From this viewpoint, the mtention of the prosecutor to later extend leniency must be disclosed. From a practical viewpoint *416 apart from due process this should be required. We tread on very dangerous grounds when we consider the many other motivations which ‘ ‘ compel ’ ’ accomplices and informers to testify and to “ bend ” or “ distort ” the truth. Add to these motivations an ‘ ‘ expectation ’ ’ of leniency, which invariably results (with or without an undertaking, express or implied) when there is an “ intention ” to do so, then common sense as well as due process requires disclosure.
■That a Federal due process issue arises in this area of sentence promise by the prosecutor to co-operative witnesses is evidenced by the recent decision of the United States Supreme Court in Napue v. Illinois (360 U. S. 264). The Supreme Court in a sentence promise issue held that the Fourteenth Amendment is violated when a State uses false evidence or when, although not soliciting it, allows it to go uncorrected. (See, also, Hawkins v. United States, 324 F. 2d 873.)
THE DUE PROCESS ISSUE: THE PROSECUTOR’S CONSTITUTIONAL DUTY TO REVEAL EVIDENCE TO THE DEPENDANT
Heretofore mainly the duty of a prosecutor to disclose a sentence promise or inducement to a co-operative witness has been discussed.
But the cases hold, under the identical principle of law, that a due process issue may also arise in related areas.
THE PERJURED EVIDENCE RULE
A due process issue is always involved when a State makes affirmative use of perjured' testimony. Where perjured testimony is presented as part of the People’s case, knowledge of falsity is not a consideration. Nor must the defendant establish that he has been prejudiced; prejudice is presumed.
The same is true when the State permits perjured evidence elicited by the defense from a State witness to stand uncorrected. Neither knowledge of falsity nor prejudice need be shown.
In the leading due process cases of Mooney v. Holohan (294 U. S. 103); Pyle v. Kansas (317 U. S. 213) and White v. Ragan (324 U. S. 760), the facts clearly established that the State prosecutor in fact had knowledge of and instigated the perjury and that prejudice in fact resulted. These decisions although couched in Federal due process terms went no further than the facts required.
Intervening and subsequent cases made clear that neither knowledge nor prejudice was an essential element of proof. In Alcorta v. Texas (355 U. S. 28) the court found a denial of due process even though the State prosecutor did not insti *417 gate the perjury and even though the perjury was not relevant to guilt but only sentence. In Napue v. Illinois (360 U. S. 264, supra), the court held that a lie (denial of a sentence promise) which concerned only credibility of a witness, tainted the conviction. (See, also, United States ex rel. Almeida v. Baldi, 195 F. 2d 815; United States ex rel. Thompson v. Bye, 221 F. 2d 763; cf. United States v. Consolidated Laundries Corp., 291 F. 2d 563; Kyle v. United States, 297 F. 2d 507; Matter of Kapatos, 208 F. Supp. 883.)
The true rule is in my opinion expressed in Jones v. Commonwealth of Kentucky (97 F. 2d 335, 338): “ The concept of due process as it has become crystallized in the public mind and by judicial pronouncement, is formulated in Mooney v. Holohan. * * * Its requirement in safe-guarding the liberty of the citizen against deprivation through the action of the state embodies those ‘ fundamental conceptions of justice which lie at the base of our civil and political institutions, ’ referred to in Herbert v. Louisiana, 272 U. S. 312, 316 * * * If it be urged that the concept thus formulated but condemns convictions obtained by the state through testimony known by the prosecuting officers to be perjured, then the answer must be that the delineated requirement of due process in the Mooney case embraces no more than the facts of that case require, and that ‘ the fundamental conceptions of justice which lie at the base of our civil and political institutions ’ must with equal abhorrence condemn as a .travesty a conviction upon perjured testimony if later, but fortunately not too late, its falseness is discovered, and that the state in one case as in the other is required to afford a corrective judicial process to remedy .the alleged wrong, if constitutional rights are not to be impaired.”
It is our “ fastidious regard for the honor of the administration of justice ” (Mesarosh v. United States, 352 U. S. 1, 14, supra) and our concern that the “ administration of justice must not only be above reproach, it must also be beyond the suspicion of reproach ” (People v. Savvides, 1 N Y 2d 554, 556, supra) that require the setting aside of a conviction when perjured testimony is used or permitted to stand uncorrected (Napue v. Illinois, 360 U. S. 264, 269) irrespective of knowledge by .the prosecution or a showing of prejudice to the defendant (cf. Barbee v. Warden, 331 F. 2d 842; cf. Kyle v. United States, 297 F. 2d 507, 513-514; Matter of Kapatos, 208 F. Supp. 883, 887-888, supra; Note, 60 Col. L. Rev. 858, 863-865; Note, 74 Yale L. J. 136, 145-150).
All of these elements of the “ perjured evidence rule” are made clearer in the discussion of the suppression rule.
*418 THE “ SUPPRESSION ”' OF EVIDENCE RULE
The suppression of evidence rule applies only to evidence in the. “ possession ” of the prosecutor. The prosecutor is presumed to have knowledge of all evidence in Ms possession as well as evidence in the possession of .the police. Therefore no element of knowledge or knowledge of falsity such as exists under the perjured evidence rule is an issue in this area.
Of course a prosecutor need not introduce all of the evidence available to him. He need not, for example, present evidence which is superfluous, redundant or irrelevant.
Nor need he introduce evidence which he believes is mistaken or false or unreliable. He is the “ captain” of his own case insofar as introduction of evidence is concerned. But if not to introduce he has the duty to reveal or disclose the existence of such evidence to the defense. Even -if .the evidence is inadmissible (e.g., an inadmissible dying declaration which exculpates the defendant) there is a duty to reveal it to the court. As one court succinctly put it: “ When there is substantial room for doubt, the prosecution is not to decide for the court what is admissible and for the defense what is useful.” (Griffin v. United States, 183 F. 2d 990, 993.)
While great discretion is left to the prosecutor as to what to introduce, little discretion is left as to what to reveal or disclose. Griffin (supra) was a direct appeal. The issue there is simply one of error of law. (See, also, People v. Capuano, 15 A D 2d 400; People v. Taylor, 2 A D 2d 977.)
In the due process cases, the focus is on whether the failure to introduce or the failure to disclose or reveal assumes constitutional dimension by denial of fundamental fairness. Here “ materiality ” of the evidence is an important consideration.
Due process looks to fundamental fairness. It would be comfortable if a comprehensive formula could be devised to determine when the fairness of a State trial is vitiated by the misconduct of the prosecutor in using perjured testimony or withholding exculpatory evidence. It is obvious from an examination of the cases that the courts must look to the particular circumstances of the particular case in reaching that decision.
Thus in Brady v. Maryland (373 U. S. 83) the prosecutor upon request of the defense failed to turn over a prior inconsistent statement of a witness. The court disregarded .the issue of willfulness or intent to mislead on the part of the prosecutor. It said (p. 87):
“We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to *419 punishment, irrespective of the good faith or bad faith of the prosecution.
“ The principle of Mooney v. Holohan is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused.”
Shortly after Brady, the Second Circuit in United States ex rel. Meers v. Wilkins (326 F. 2d 135, 137) announced that a request “ is not a sine qua non to establish a duty on the prosecution’s part. ’ ’ And, noting that the Brady court had cited United States ex rel. Almeida v. Baldi (195 F. 2d 815, supra) and United States ex rel. Thompson v. Dye (221 F. 2d 763, supra) as stating 1 ‘ the correct constitutional rule ’ ’ the Second Circuit stated (p. 139): “ Formulation of the duty [to disclose] in terms of wilful or wrongful conduct would seem only to confuse here, and is not necessary under the governing law as we understand it.” In Meers, the prosecutor had failed to disclose two eyewitnesses who could not identify the defendant but produced two who could. The Brady court had laid down a “ prejudice ” test requiring only that the evidence suppressed be “ material to guilt”. The Meers court held that the evidence must be material and exculpatory, though not necessarily important enough to change the verdict (p. 140). By “ exculpatory ” the court meant evidence which tends to exonerate the defendant. In the State court (People v. Meers, 255 App. Div. 941) the Appellate Division found that the evidence withheld would not have been sufficient to acquit Meers. The State court .treated the issue as an application for a new trial overlooking the due process issue.
The Fourth Circuit in Barbee v. Warden (331 F. 2d 842) considered a case where the police (unknown to the prosecutor) suppressed the result of a ballistic test which while not relevant to Barbee’s guilt as an accomplice in the felony murder did establish that Barbee had not fired the fatal shot. Chief Judge Sobeloff, in what will surely be the leading case on the issue, answered four contentions by the Government:
1. The evidence withheld need only “ tend to exculpate ” the petitioner (p. 845).
2. It is no answer that Barbee’s attorney failed to ask for the result of the test (p. 845).
3. The effect on the nondisclosure is not neutralized because the prosecuting attorney was not shown to have had knowledge of the exculpating evidence. “ The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State’s Attorney, were guilty of the nondisclosure ” (p. 846).
*420 4. ‘ ‘ With respect to the necessity for a showing of prejudice, the cases .sometimes draw a distinction between the knowing use of false testimony and the passive nondisclosure of exculpatory evidence. In the first type of case the sentence will be set aside without inquiring into whether the defendant has been prejudiced, while in the latter some consideration of the possible effect of the irregularity upon the fairness of trial is necessary. How strong a showing is required in a given case will depend upon the nature of the charge, the testimony of the state, and the role the undisclosed testimony would likely have played” (p. 847).
Item four states the law both under the perjured evidence and the suppression rules as succinctly as it possibly could be stated. Judge Sobeloee summarized the finding in this regard (p. 847): “ In the present case, where evidence was withheld by the police which had a direct bearing upon and could easily have weakened or overcome testimony adverse to the defendant, we will not indulge in the speculation that the undisclosed evidence might not have influenced the fact finder.”
Other cases where the courts found a violation of due process are discussed in Matter of Kapatos (208 F. Supp. 883, supra).
The “ materiality ” test need not affect considerations at the trial per se.
Some of the more recent cases discuss “ prejudice ” in terms of pretrial disclosure. For example, in United States ex rel. Butler v. Maroney (319 F. 2d 622) the prosecutor suppressed a statement of an eyewitness that a “.struggle” preceded a killing. The defense was temporary insanity. If the statement had been disclosed pretrial, the defense would have been self-defense. This was held “ material ”. And in Ashley v. State of Texas (319 F. 2d 80) the prosecutor suppressed a report of two psychiatrists indicating that Ashley was insane; he used instead reports of two other psychiatrists finding him sane. Here again the suppression was found “material” because it affected defense preparation adversely. From this viewpoint prejudice is not measured solely by the effect of the suppression on the trial per .se but rather its effect on pretrial preparation.
By the same analogy the use of perjured testimony or the suppression of evidence may “ coerce ” a plea (see my discussion in the 1962 opinion, pp. 5-7, 9-10, 39-45, 48-57; cf., also, People v. Codarre, 20 A D 2d 98). This is one of the due process issues pending before the Court of Appeals. I do not discuss it.
I find as a matter of fact that a sentence promise was in fact made to Lococo which was known to the prosecutor. That his *421 failure to correct Lococo’s false testimony at the trial constitutes a denial of due process.
I find this independently on the evidence in the instant cor am nobis proceeding and on the law discussed.
In my determination of the “ materiality ” of the false testimony which was permitted to stand uncorrected, I am not influenced by my 1962 findings that Lococo committed perjury not alone in particular details but in his total testimony concerning the part played by petitioner Yamin in this crime. Nor am I influenced by the previous finding that Lococo suborned the perjurious testimony of the only nonaccomplice witness in the case (see pp. 41-45 of 1962 opinion).
Quite independently I find that the false denial by Lococo was “material” to the result. The failure of the prosecutor to correct the testimony violated due process. Petition is granted.