THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, *v.* LEROY SHANNON *et al.*, Petitioners-Appellants.

(No. 59245;

First District (2nd Division)—May 13, 1975.

Paul Bradley and Martin Carlson, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (James S. Veldman and Jerald A. Kessler, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

Petitioners, Leroy Shannon and Melvin Garrett, appeal from the denial, without an evidentiary hearing, of their amended petition filed pursuant to the terms of the Illinois Post-Conviction Hearing Act. (Ill. Rev. Stat. 1971, ch. 38, par. 122—1 *et seq.*) The amended petition alleged that their burglary convictions, affirmed by this court in *People v. Morris* (1972), 7 Ill.App.3d 1055, 289 N.E.2d 73, had been obtained by the State's use of perjured testimony at their original bench trial. In the instant appeal, they contend that this allegation, supported by the affidavit of one Kenneth Dompier (attached to the petition), not only raised an issue of constitutional dimension, but also entitled them to an evidentiary hearing. The State contends that the amended petition contained mere conclusional allegations and made no substantial showing of a violation of constitutional rights.

The amended petition alleged that petitioners were deprived of constitutional rights in that the State used the perjured testimony of the part owner of the building, Arthur C. Horman, at their original trial. The essence of their trial defense was their claim that, although they had entered the building without consent of the owner, they had entered through an open front loading dock door and their sole intention had been to finish drinking a bottle of wine. At trial, petitioner Shannon testified to this defense. The part owner of the building had testified that the door could not have been open without alerting the American District Telegraph alarm service which covered the building, because any opening of the door would have triggered the alarm and would have brought alarm service personnel promptly to the scene. But, according to the affidavit of Kenneth Dompier, Horman knew that the power cable which brought electricity to the building including that for the operation of the alarm service, had been severed prior to the date of the alleged offense. Horman, it was alleged, had also testified falsely that, on an

inspection which he had made prior to the offense, the building had been normal and undamaged, when in fact he had known that the power cable had been severed. This testimony of Horman, which the amended petition alleged was perjured, had substantially impaired petitioners' defense because it had prejudicially impeached the credibility of petitioner Shannon, who had presented the crucial testimony as to petitioners' intent. Petitioners also claimed they had been denied the right to confront witnesses when Horman, although not sworn, had been allowed to "testify" at the preliminary hearing that the door could not have been open without triggering the ADT alarm. Petitioners also alleged that they believed that perjured testimony may also have been given at the grand jury hearing, and they attached to their amended petition a motion for discovery of the grand jury minutes, marked "Denied."

The affidavit of Kenneth Dompier stated that he was an employee of the building located at 2537 S. Wabash Avenue in Chicago and that "a few days" before 8 July, 1970 (the date of the burglary), during an inspection, he had discovered "that the main power cables running into the building had been severed"; that the building was wired with an alarm system which included the doors for the loading dock; that, as a result of the severance of the cables, the alarm system would not function; and that during the inspection he had shown Mr. Horman that the wiring had been severed.

The testimony at the trial in early January of 1971 consisted of the testimony of four police officers, Horman, and defendant Shannon. Horman had first testified at a preliminary hearing on 9 July 1970 that he was a part owner of the building, a three-story, limestone-building with a brick back; that the building was not occupied on 8 July 1970; and that he had given no one permission to enter. He had inspected the building after he had been notified of the incident. He said that the damage consisted of copper cable torn off the wall, along with boxes and lighting fixtures. Asked if he had had a guard there, he answered, "A.D.T. covers the building," and that this was "the alarm." He testified that on 8 July 1970, the locks were still in good condition, as was the building except for a broken window in the back. On 14 July 1970 (the preliminary hearing having been continued), a person identified in the transcript as "a voice," evidently Horman, answered a question from the court about how much was invested in the building by answering, "$265,000" and stated: "The front door was covered by A.D.T. It couldn't have been opened." In context, presumably the witness meant that it couldn't have been opened without triggering the alarm.

At the trial on 7 January 1971, Horman testified he had "A.D.T. protecting" the building and had paid for this protection. He had last been at the building on 5 July 1970 with his former engineer, Kenneth Dompier,

and a fireman, Tilman Murff.[1] When he was inside the building, the interior "seemed to be perfectly normal." When he left the building on 5 July, the doors were locked. When he examined the building on the morning of 8 July 1970, the electric wing had been pulled out, and the electrical boxes and the generators had been pulled apart. Windows in the back of the building were broken, and the damage was between $25,000 and $30,000. The building was sold for $68,500. There were five doors operated by electric motors and two doors operated by keys, and it was not possible forcibly to enter the former. He had keys to the locks and the A.D.T. alarm people had keys. He first got word of the incident from A.D.T. personnel about 6:45 in the morning of 8 July, and, at their suggestion, went to the police station. The windows in the back were broken from the outside; more than three were broken. He saw copper fixtures piled near the doors on July 8.

■■ Treated in logical order, the State makes the threshold contention that the issue of the relative credibility of Horman and of petitioner Shannon was necessarily involved in the petitioners' direct appeal and is therefore res judicata. But the issue raised by petitioners' amended post-conviction petition is an entirely different issue, namely, that a part of Horman's testimony was perjured and that the perjured part related directly to the credibility of Shannon in respect of his defense testimony as to the essential element of petitioners' intent in entering the building. Moreover, the perjured character of that part of Horman's testimony was based on matters outside the record (namely, the facts alleged in Dompier's affidavit), so that the issue raised by the post-conviction petition could not have been raised on the direct appeal. The State does not dispute the fact that Dompier's testimony was discovered by petitioners only after the trial and does not contend that the testimony reasonably could or should have been discovered before trial. We conclude, therefore, that the issue raised by the allegations of the post-conviction petition was not rendered res judicata by the direct appeal.

The second issue between the parties arose as follows: As one ground for its motion to dismiss the post-conviction petition without an evidentiary hearing, the State alleged that the allegations of the petition failed to raise an issue of constitutional dimension. In argument on the motion, the State supported this contention on the ground that the petition failed to allege that the State had *knowingly* used the alleged perjured testimony; the allegation was merely that the State had used it in obtaining the burglary convictions. In the absence of an allegation of knowing use, the issue raised was not one of constitutional dimension

---

[1] At the preliminary hearing on 9 July 1970 (a Thursday), Horman had testified that he had last been at the building "last Friday," which would have been 3 July 1970.

because mere unknowing use cannot be said to constitute State action within the meaning of the due process clause. In the further course of the argument on the State's motion to dismiss, petitioners conceded that the great weight of case authority, both State and Federal, supported the State's contention, but suggested that there was a minority view and that the issue had never been decided in Illinois. On this appeal, the State's brief does not advert to this particular issue, but petitioners' brief does; and, in support of their contention that the State's use, whether knowing or unknowing, of perjured testimony in obtaining the burglary convictions raises an issue of constitutional dimension under the due process clause concept of fundamental fairness, petitioners cite *People v. Sims* (1972), 4 Ill.App.3d 878, 880, 282 N.E.2d 16.

In *Sims*, in remanding a post-conviction petition for an evidentiary hearing, the court said that "an allegation of a conviction founded upon perjured testimony, whether knowingly used or inadvertently used, is of constitutional dimension." In that respect, the court cited as appropriate the following language in *Jones v. Kentucky* (6th Cir. 1938), 97 F.2d 335, 338:

> "'[T]he fundamental conceptions of justice which lie at the base of our civil and political institutions,' must with equal abhorrence condemn as a travesty a conviction on perjured testimony if later, but fortunately not too late, its falseness is discovered * * *. [T]he state in the one case as in the other is required to afford a corrective judicial process to remedy the alleged wrong, if constitutional rights are not to be impaired." [2]

It is clear that, in Illinois as elsewhere, an allegation in a post-conviction petition that the State had *knowingly* used perjured testimony relating to a material issue of the offense charged or to the credibility of a witness who had testified to such a material issue raises an issue of constitutional dimension. (*People v. Martin* (1970), 46 Ill.2d 565, 264 N.E.2d 147.) Whether in Illinois the allegation, in order to raise an issue of constitutional dimension, must be an allegation of *knowing* use is not clear. The inference that it must, sought to be drawn from cases such as *People v. Martin* and *People v. Frank* (1971), 48 Ill.2d 500, 506, 272 N.E.2d 25, does not follow because in those cases the allegation involved

---

[2] We are aware of later decisions of Federal Circuit Courts of Appeal (in many of which certiorari was denied by the United States Supreme Court) which are in conflict with *Jones v. Kentucky* as to whether the unknowing use of perjured testimony raises an issue of constitutional dimension. See for example: *Hoffa v. U.S.*, 339 F.Supp. 388 (E.D. Tenn. 1972), *aff'd*, 471 F.2d 391 (6th Cir. 1973), *cert. denied*, 414 U.S. 880 (1973); *Elliott v. Beto*, 474 F.2d 856 (5th Cir. 1973), *cert. denied*, 411 U.S. 985 (1973); *Reed v. U.S*, 438 F.2d 1154 (10th Cir. 1971). We believe, however, that whatever may be the present status under current Federal law of the view expressed in *Jones v. Kentucky*, Illinois law is expressed by the decision in *Sims*.

was in fact an allegation of knowing use, so that naturally the opinion concerns itself solely with that allegation and, again naturally, indicates that the evidence to be introduced at an evidentiary hearing on the petition containing such allegation must show evidence of the State's knowing use.

██ On the other hand, while the question was not developed, *Sims* is nevertheless a square holding that an allegation in a post-conviction petition that petitioner's conviction was based on perjured testimony raised an issue of constitutional dimension despite the failure to allege that the State had *knowingly* used the said perjured testimony. We agree with *Sims* in this matter.[3] We think that the restricted scope of the concept of State action, upon which the requirement of knowing use is based, was abandoned in *Shelley v. Kraemer* (1948), 334 U.S. 1, 92 L.Ed. 1161, 68 S.Ct. 836. There the United States Supreme Court held that the use of the State's judicial process to enforce the legal right of a private individual under a racial restrictive covenant constituted State action in violation of fourteenth amendment due process. Similarly, the use of the State's judicial process to enforce a right of the People, the violation of which is based upon the perjured testimony of a private individual, constitutes State action whether or not the State knew that the testimony was perjured. Known to the State or not, the use of its judicial process to convict and imprison on perjured testimony is a miscarriage of justice which is abhorrent to fundamental fairness and as such is intolerable. Perjury is the mortal enemy of justice, and the battle between them must be waged at every level, including the constitutional. For the administration of human justice, the Eighth[4] is the first and the greatest Commandment.

██ The State's third contention on its motion to dismiss was that, even if the allegation in petitioner's post-conviction petition that the State had used perjured testimony in obtaining their convictions for burglary did raise an issue of constitutional dimension, the allegation was merely conclusional in nature and the petition lacked the necessary further allegations of supporting specific facts. It is true that, if the allegation raising an issue of constitutional dimension is merely conclusional in nature and is not supported by further allegations of specific facts, it is not error to dismiss the petition without an evidentiary hearing, because the burden is on the petitioner to support the conclusional allegation with further allegations of specific facts. (*People v. Harris* (1973), 55 Ill.2d 15, 302 N.E.2d 1; *People v. Bassett* (1974), 56 Ill.2d 285, 307 N.E.2d 359.) On the other hand, if the conclusional allegation is supported by further allegations of specific facts, it is reversible error to dismiss the post-con-

---

[3] So do other State courts: *People v. Yamin* (1965), 45 Misc.2d 407, 257 N.Y.S.2d 11, 22.

[4] or, under alternate numbering, the Ninth.

viction petition without an evidentiary hearing. *People v. Martin.*

In the instant case, attached to the post-conviction petition were the transcripts of the preliminary hearing and of the trial, and the affidavit of Dompier. These attachments contained what would appear to be the necessary supporting facts: the trial transcript presents the verbatim trial testimony of Horman and Dompier's affidavit presents the specific facts which Horman allegedly knew at the time of his trial testimony. Moreover, the impact of Horman's trial testimony on the credibility of Shannon's trial testimony as to petitioners' intent in entering the building is equally obvious from the trial transcript.

But the State, both below in its argument on its motion to dismiss and in its brief on this appeal, contends that these apparently adequate supporting facts, taken as true, still do not support the conclusional allegation in the petition as a matter of law because these facts do not establish perjury as a matter of law. Moreover, in dismissing the petition, the post-conviction court stated that perjury did not enter into the trial proceedings, which is equivalent to a ruling that Horman's trial testimony did not constitute perjured testimony as a matter of law.

Perjury is defined by statute (Ill. Rev. Stat. 1971, ch. 38, par. 32—2) as follows:

> "A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true."

The supporting facts and alleged facts herein demonstrate that, at trial, Horman, while under a legally required oath, made the statement that the loading dock door could not have been open because, had it been opened, the alarm system would have alerted the alarm service personnel, which had not happened. Dompier's affidavit demonstrated that this statement was in fact false because the alarm system was inoperative owing to the severing of the electric cables which provided the electricity which operated the system. The falsity of the statement was material to the issue of petitioners' guilt or innocence in the burglary prosecution because the falsity of the statement had a direct relationship to the credibility of petitioner Shannon who had testified for the defense on the material issue of petitioners' intent in entering the building.

The crucial question then becomes: where are the alleged facts, supporting the final requirement for the offense of perjury, that Horman made the false trial statement even though he then knew or believed the statement to be false? Petitioners contend that, since Horman actually knew several days before the incident that the cables carrying electricity in to the building had been severed, he could not have believed to be true

his statement that the alarm would have been triggered, had the door been opened. The State responds that there is no allegation that Horman knew that the electricity powering the alarm system was supplied by the cables which he knew to have been cut. Absent such alleged additional knowledge, no allegation has been made to support the necessary perjury element that he did not believe his trial testimony to be true. Hence, his trial statement as a matter of law did not constitute perjured testimony; the allegation in the post-conviction petition that it did was a mere conclusional allegation; and the post-conviction court was correct in holding that perjury had not entered into the trial proceedings.[5]

■■ In *People v. Bracey* (1972), 51 Ill.2d 514, 283 N.E.2d 685, our supreme court held that, in order to obtain relief in a post-conviction evidentiary hearing on the grounds of trial perjury, the petitioner had the burden of establishing the use of prejured testimony by clear and convincing proof. We think that, a fortiori, at a prior hearing on the State's motion to dismiss the post-conviction petition without an evidentiary hearing, petitioners had the burden of supporting their conclusional allegation of the State's use of perjured testimony in obtaining their convictions by further allegations of legally adequate specific facts. We held that the petitioners herein have failed to sustain their burden owing to the absence of any allegation that Horman knew that the electricity powering the alarm system was supplied by the cables which he allegedly knew to have been cut. Such allegation was essential as a matter of law to the characterization of Horman's relevant trial testimony as perjured. *People v. Williams* (1973), 11 Ill.App.3d 50, 295 N.E.2d 487 (abstract opinion).

In summary, the State has advanced three contentions to support affirmance of the dismissal of petitioners' post-conviction petition without an evidentiary hearing:

(1) The allegation of the use of perjured trial testimony of Horman to obtain petitioners' convictions raised an issue which had been rendered *res judicata* by petitioners' direct appeal;

(2) The allegation failed to raise an issue of constitutional dimension because it did not charge a knowing use by the State of the allegedly perjured trial testimony;

---

[5] We note, moreover, that Horman testified that he was first notified of the incident by a telephone call from ADT personnel at 6:45 A.M. on 8 July 1970. This circumstance, which was true, would tend to support a belief on his part that the ADT alarm service was still operative in protecting the building, and therefore it would tend to weaken the necessary requirement for perjury that he did not believe to be true his testimony as to the operative coverage of the building by the ADT service. Petitioners do not allege that Horman also knew that the ADT personnel had been alerted by the police and not by an alarm, so that he could not have been misled by the circumstance of having been first notified by the telephone call from ADT personnel.

(3) The allegation was conclusional in nature because it lacked supporting allegations of essential specific facts to demonstrate that Horman's trial testimony constituted perjury as a matter of law.

We have rejected the first two of the State's contentions and hold that petitioners' allegation raised an issue of constitutional dimension which was not res judicata. We have accepted the third contention of the State because the post-conviction petition lacked any supporting allegation that Horman did not believe his testimony to be true. Our holding on the State's third contention is dispositive of this appeal and we affirm the dismissal of petitioners' post-conviction petition without an evidentiary hearing.

Attached to the petitioners' post-conviction petition was the transcript of petitioners' trial; the transcript was attached in order to show the trial testimony of Horman which was alleged to be perjured, and the trial testimony of Shannon as to the intent with which petitioners had entered the building. Owing to the attachment of the trial transcript, the State might have advanced a fourth contention as follows: assuming that the allegations of the post-conviction petition were sufficient to require an evidentiary hearing and assuming further that, at such evidentiary hearing, petitioners proved by clear and convincing evidence that Horman's trial testimony in relevant part was perjured and to that extent had impeached the credibility of Shannon who had testified for the defense as to the essential element of petitioners' intent in entering the building, nevertheless, the petitioners could not prevail because the trial transcript establishes beyond a reasonable doubt that the perjured testimony did not contribute to the convictions. *People v. Bracey* establishes the respective burdens of petitioners and of the State upon the evidentiary hearing, and the sequential cases of *People v. Martin* (1970), 46 Ill.2d 565, 264 N.E.2d 147, and *People v. Martin* (1974), 56 Ill.2d 322, 307 N.E.2d 388, illustrates how the issue of whether perjured testimony contributed to the conviction normally arises, and the later *Martin* case also illustrates how the State sustained its burden. In view of the procedure followed in the *Martin* cases, the State may have thought it premature to raise this fourth contention on its motion to dismiss without an evidentiary hearing. But we think that, under the instant circumstances, judicial economy would be served by raising the issue on the motion to dismiss without an evidentiary hearing.

In any event, as did this court in *People v. Williams,* we elect to express our further opinion, reached after a careful study of the trial transcript and the opinion affirming the convictions on the direct appeal (*People v. Morris*), that the targeted portion of Horman's trial testimony, even if viewed as perjured, did not, beyond a reasonable doubt, contrib-

ute to the convictions. Assuming, then, that the targeted portion of Horman's testimony was perjured, we ignore it and we ignore its impeaching effect on the testimony of Shannon; and we accept as true Shannon's testimony that the front loading dock door was open. The assumed fact that the door was open does not, of course, upset these burglary convictions (*People v. Blair* (1971), 1 Ill.App.3d 6, 272 N.E.2d 404, *aff'd* (1972), 52 Ill.2d 371, 288 N.E.2d 443), and the fact, as such, is completely immaterial to the substantive trial issues.

■■ The State's case in chief consisted of the testimony of Horman and the testimony of four police officers who had been involved in the incident. In summary, the officers' collective testimony was that the attention of the police had first been drawn to the building by hearing pounding and loud noises within the building; that, in order to investigate the sounds, they entered the building accompanied by police dogs; that, on entering the building, they saw plumbing fixtures, electrical boxes, and wiring piled up near the door, and a sledge hammer lying near by; that the dogs located three persons (including the two petitioners), all of whom were hiding: one in a boiler, one in a coal chute, and one in a furnace flue; that all three persons were sober, and that there was no odor of alcohol on the breath of any one of them; that, when each of the three was later separately interrogated, each gave a different explanation for their presence in the building. The unchallenged portion of Horman's testimony established ownership of the building and that he had not given permission to enter the building. For the defense, Shannon testified that the three had entered the building through the open front loading dock door with the sole intent to finish drinking their wine, and that somehow the door had then closed upon them. Shannon's credibility was impeached by evidence of three prior convictions for burglary. In our opinion, this testimony demonstrates beyond a reasonable doubt that the assumed perjured testimony of Horman did not contribute to those convictions.

We affirm the dismissal of the amended post-conviction petition without an evidentiary hearing.

Judgment affirmed.

STAMOS and LEIGHTON, JJ., concur.