*In re* PAMELA PYLES, a minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* GERALD PYLES, Respondent-Appellant.)

Third District No.   75-415

Opinion filed July 21, 1976.

Dennis A. DePorter, of Braud, Warner & Neppl, of Rock Island, for appellant.

David DeDoncker, State's Attorney, of Rock Island (Susan B. Gende and Stephen Andich, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a finding of the Circuit Court of Rock Island County that Pamela Pyles, a minor child, was a neglected child (Ill. Rev. Stat. 1975, ch. 37, pars. 702—4, 704—1). Following an adjudicatory hearing, the trial court found the child was neglected and declared her a ward of the court. The court, however, decreed the child to stay in parental custody, but granted the County Probation Department visitation rights for two years.

■■ Some three months after the adjudicatory order in this case, the respondent Gerald Pyles, the girl's father, filed a motion to vacate the order under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72). In the petition, the petitioner alleged the existence of new evidence. Petition was denied by the trial court. The appeal is taken from such denial of the motion to vacate the judgment. It is observed, initially, that a section 72 petition was a normally proper vehicle with which to bring the issue before the court. The adjudicatory order in a juvenile case is a final order for purposes of appeal. (Ill. Rev. Stat. 1975, ch. 37, par 704—8(3).) The usual 30-day period for motions to vacate under section 68.3 of the Civil Practice Act had expired before the petition in the instant case was filed, even though it was filed within 30 days of the dispositional order.

■■ As noted in *People v. Colletti* (1971), 48 Ill. 2d 135, 137, 268 N.E.2d 397, relief under a section 72 petition is not available on the grounds of newly discovered evidence. A section 72 petition, however, may properly be used to bring before the court facts not of record which, if known to the court at the time judgment was rendered, would have caused the court to make a different determination than was made by the court. *(Danforth v. Checker Taxi Co., Inc.,* 114 Ill. App. 2d 471, 475, 253 N.E.2d 115 (1st Dist. 1969); *Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 505, 165 N.E.2d 294.) Even in this type of section 72 petition, however, the petitioner must show freedom from fault, negligence and lack of diligence in presenting the new material for the consideration of the court at such late date. *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 467, 236 N.E.2d 719; *Danforth v. Checker Taxi Co., Inc.,* 114 Ill. App. 2d 471, 253 N.E.2d 115 (1st Dist. 1969).

It is necessary to review the record briefly for the purpose of considering the propriety of the trial court's action in denying the section 72 petition in the instant case. From the record it is apparent that the juvenile petition was filed on February 19, 1975, following an unusual injury to the minor child. Pamela was taken to the hospital late on February 15, 1975, or early the next morning, with a tear in her vaginal area, extending from one-half inch behind the vaginal opening, to the

opening, and some 2½ to 3 inches inside the vagina to the mouth of the cervix.

Medical and social personnel testified that Mr. Pyles told them that the daughter suffered the injury when she fell onto the corner of a coffee table while playing that afternoon or evening. Pyles denied saying this, however, and testified that the injury occurred when Pamela fell on a leg of the table after one of her brothers had knocked the table over.

The examining doctor who repaired the wound, Dr. Eihl, testified that the injury must have been caused by an object penetrating into the vagina, and that the corner of a coffee table, to have caused such a tear internally, would have done considerably more damage to the external areas. Two of Pamela's brothers, ages 10 and 8 years old respectively, testified in conflict as to some particulars but indicated their sister had fallen on the leg of the overturned coffee table.

The minor, Pamela, however, did not testify after the trial court determined that she was too young to give competent testimony. Two psychologists, one selected by the father, interviewed Pamela before the hearing and found she was unable to talk about the injury and reluctant to talk about her father.

■■ The trial court found the child to be neglected, on the basis of the extremely abnormal injury and the anxiety neurosis demonstrated by the child in relation to the injury and to her father. The court placed great weight on the testimony of Dr. Eihl that the injury was caused by penetration and the child's refusal to talk about the injury or her father. The court also considered discrepancies in the testimony of the minor's brothers, and contradictions between the father's testimony and other evidence, including prior statements made by the father. Even if the discrepancies and contradictions discrediting the family's testimony were explained away, the court found that the possibility of the injury being caused by the table leg was unlikely because there were no tears or rips in the clothing worn by the child at the time which would correspond to such an occurrence.

The new evidence which is brought to the court's attention in the section 72 petition consisted of two items: (1) Pamela had finally now begun to talk about the injury and had described it as happening just as her father did at the adjudicatory hearing; and (2) Dr. Dihl, in a deposition, testified that the father's version of the incident was medically plausible.

The trial court, when confronted with this information at the dispositional hearing, expressed a view that the evidence showed more likely than not the father's story was inaccurate and that there must be some other explanation for the unusual injury. When the section 72 petition was submitted some four weeks later, the court denied the petition.

Courts of review are reluctant to overturn denials of section 72 petitions which are brought on the basis of newly-discovered evidence. A petition of this type normally addresses itself to the trial court in presenting evidence unknown to the court at the time of its decision, on the premise that it might have produced a different result had it been revealed earlier. Under such circumstances, the trial court is in the best position to know if the original decision would be altered by consideration of the information now tendered. It is difficult for us to determine that this new evidence should have produced a change in the mind of the trial court when the trial court has indicated otherwise.

Even where new evidence is persuasive, the reviewing court might be reluctant to vacate the judgment, if it concludes that the petitioner was culpable in failing to present the evidence at an earlier time in the proceedings.

■■ Here the depositional testimony of Dr. Eihl, it seems, could easily have been elicited when he was on the witness stand during the adjudicatory hearing. There appears to be no valid reason that would excuse the neglect in presenting the doctor's opinion concerning the table leg three months after the adjudicatory hearing, when it could have been placed in the record with a few simple questions at that time. Irrespective of these observations, however, the fact that a table leg could have caused the injury, from a medical standpoint, would not necessarily change the court's observation that other physical evidence, particularly the location of the rips in the child's pants, may have indicated the improbability of the child being injured by the table leg.

■■ With respect to the eventual ability of Pamela to talk about the injury and how it occurred, her corroboration of her father's story would be significant, particularly since the court relied heavily on Pamela's reluctance to talk and the improbability of the father's story. The State points out that the trial court had originally found Pamela herself too young to be a competent witness. The fact that a 5-year-old girl, after refusing to discuss an injury to herself for several months, suddenly begins to talk about it and corroborates what the trial court found to be an improbable story, does not necessarily render the story sufficiently more probable to cause the trial court to change its mind.

■■ Since the appeal period for adjudication of neglect and wardship had passed, and the father was in position where he was attempting to use section 72 petition to challenge the court's decision, we do not believe that the trial court's determination that the presentation of facts not known to the court at the time of the adjudication could cause the trial court to vacate or otherwise modify the original judgment. We, therefore, conclude that the trial court did not err or abuse its discretion in denying the petition. We are also not inclined to interfere with the court's

determination in view of the extremely light disposition made by the trial court, in which he permitted the child to be kept with the parents and simply granted the county probation department the right to visit the home and child for a period of two years.

The trial court, in a thorough and concise written opinion analyzing the evidence and explaining its reasoning, makes it abundantly clear that the presentation of supplementary evidence could not have resulted in a change of the court's determination.

Since we find no reversible error in the record, the judgment of the Rock Island County Circuit Court is affirmed.

Affirmed.

STOUDER and BARRY, JJ., concur.