THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUTHE CARBONA, Defendant-Appellant.

First District (4th Division)   No. 76-1027

Opinion filed October 13, 1977.

Julius Lucius Echeles and Carolyn Jaffe, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Paul Benjamin Linton, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendant, Ruthe Carbona, appeals from a denial of her motion for a new trial based on newly discovered evidence. After a jury trial, defendant was convicted of murdering her husband and sentenced to a term of 20 to 60 years. On direct appeal, the conviction was affirmed by this court in *People v. Carbona* (1975), 27 Ill. App. 3d 988, 327 N.E.2d 546. Subsequent petitions for rehearing in this court, leave to appeal to the Illinois Supreme Court (60 Ill. 2d 598), and for *certiorari* to the United States Supreme Court were denied. (424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114.) The issue for review is whether the trial court properly dismissed defendant's motion for a new trial without an evidentiary hearing.

Defendant was convicted in the circuit court of Cook County and sentenced on June 23, 1973. On May 6, 1976, defendant filed a "motion for a new trial based on newly discovered evidence" without stating a procedural basis for her motion. The State sought to dismiss defendant's motion, and after a hearing on June 3, 1976, the court, without holding an evidentiary hearing, sustained the State's motion and denied defendant's motion for a new trial. Defendant appeals from that denial and urges that an evidentiary hearing should be held on the defendant's motion for a new trial.

We affirm the ruling of the trial court.

A factual setting which formed the basis for defendant's claim of newly discovered evidence occurred at defendant's trial when she was asked on cross-examination whether she had been on a houseboat with a builder from Florida some weeks after the incident when her husband was shot. She replied, "Not that I remember." On rebuttal, the State called Robert Dalziel, who testified that in July of 1972, defendant was on his houseboat on Fox Lake. Dalziel stated a Mr. Jacovac who, with his wife was also on the houseboat, had used the words "cop killer" with respect to defendant.

Dalziel testified George Dolan, who was also present at that time, later asked her how she had become known as the "cop killer." In reply she stated, "I was glad he was awake and wasn't sleeping when I shot him." Dalziel then asked her where her kids were, and she replied, "I waited until my kids went to school. My kids were at school."

On cross-examination, Dalziel testified he was a friend of Officer Marinelli, one of the investigating officers in the case, who had purchased construction material from Dalziel's firm, and that he had called Marinelli after he got into a fight with a man in a bar. Dalziel testified that the first time he told anyone about the July 1972 incident on the houseboat was in the latter part of February 1973, when he related it to Officer Marinelli in a bar.

In surrebuttal, John Jacovac testified he was on the boat with Robert Dalziel on the weekend of July 4, 1972, along with his wife, defendant and George Dolan. He stated he had heard rumors that defendant had been charged with murdering her husband, but he did not know defendant had an alleged nickname of "cop killer" and did not hear the term used. Jacovac's wife testified that during the day they were on the boat there was never any mention or discussion of defendant shooting her husband nor did anyone else use the term "cop killer" that day. Ruthe Carbona then testified that she was on the boat on the July 4 weekend, but nobody referred to her as a "cop killer."

Sometime after her conviction, but before post-trial motions were argued, defendant wrote a letter to the trial judge asking for a new trial. In the letter she stated she could give him George Dolan's telephone number in Florida, and Dolan would be able to verify she had never said what Dalziel testified she had. The letter was filed on June 6, 1973, at the request of her attorney and was considered by the court at the hearing in aggravation and mitigation after the court denied defendant's extensive motion for a new trial.

The newly discovered evidence which defendant relies on is an affidavit from George Dolan. He stated he was on a houseboat owned by Robert Dalziel on July 2, 1972, but at no time did he ever hear anyone use the words "cop killer" with reference to defendant or anyone else. The affidavit further stated that in February or March of 1973, he received two or three telephone calls from two different men, whose names he could not recall, but who identified themselves as assistant State's Attorneys from Chicago. They related to him that Robert Dalziel told them that while he was on the houseboat he overheard Jacovac refer to defendant as a "cop killer" and that later that same day, Jacovac asked her how she got that name and she told him that she had shot her husband when he was awake and after waiting until her children had gone off to school.

Dolan stated in the affidavit that he had never heard what Dalziel said and never heard such a conversation at any time.

Defendant contends Dolan's affidavit is crucial because Dalziel's testimony was damaging, the State's case against her was "far from strong" and the State deliberately kept from the defense its knowledge of Dolan's denial of Dalziel's assertions. Defendant also stated that she exercised due diligence in attempting to ascertain the whereabouts of George Dolan subsequent to the mention of his name in Dalziel's testimony.

## OPINION

■■ Although defendant has failed to specify the procedural basis of her motion, we will consider it to be a petition pursuant to the Illinois Post-Conviction Hearing Act. (Ill. Rev. Stat. 1975, ch. 38, par. 122—1 *et seq.*) We note defendant is foreclosed from other possible procedural devices. Section 116—1(b) of the Illinois Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 116—1(b)) provides that relief may be granted only if a motion is made within 30 days following the return of a verdict; and relief under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72) is not available on the grounds of newly discovered evidence. (*People v. Colletti* (1971), 48 Ill. 2d 135, 268 N.E.2d 397; *In re Pyles* (1976), 40 Ill. App. 3d 221, 351 N.E.2d 893; *People v. Wade* (1977), 51 Ill. App. 3d 721, 366 N.E.2d 528.) A writ of habeas corpus is appropriate only where the judgment of commitment is void and not merely erroneous. *People ex rel. Kazubowski v. Ray* (1971), 48 Ill. 2d 413, 272 N.E.2d 225, *cert. denied* (1971), 404 U.S. 818, 30 L. Ed. 2d 118, 92 S. Ct. 65.

As stated by the court in *People v. McGinnis* (1977), 51 Ill. App. 3d 273, 275, 366 N.E.2d 969, 971:

"However, a post conviction petitioner is not entitled to an evidentiary hearing on the petition as a matter of right. (*People v. Meeks* (1975), 31 Ill. App. 396, 334 N.E.2d 253.) The trial court should grant an evidentiary hearing only if the petition demonstrates a violation of constitutional rights. (*People v. Arbuckle* (1969), 42 Ill. 2d 177, 246 N.E.2d 240.) It is petitioner's burden to set forth in what respect his constitutional rights were violated and support the allegations with affidavits, records, or other evidence which demonstrates a violation of these rights. Absent such a showing, the court may dismiss the petition without a hearing. *People v. Farnsley* (1973), 53 Ill. 2d 537, 293 N.E.2d 600."

■■ The knowing use of perjured testimony by the State to secure a

conviction of an offense denies defendant's constitutional right to a fair trial and due process of law and constitutes a ground for post-conviction relief. *People v. Rose* (1969), 43 Ill. 2d 273, 282, 253 N.E.2d 456; *People v. Martin* (1970), 46 Ill. 2d 565, 264 N.E.2d 147; *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194; *Napue v. Illinois* (1959), 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173.

However, the issue of perjured testimony may be waived if not raised when a previous appeal was taken. (*People v. Brasfield* (1966), 35 Ill. 2d 560, 221 N.E.2d 225.) Only when application of the waiver principle would be inconsistent with fundamental fairness has this rule been relaxed by the court. *People v. Agnello* (1966), 35 Ill. 2d 611, 221 N.E.2d 658; *People v. Armstrong* (1975), 29 Ill. App. 3d 1029, 331 N.E.2d 834.

■■ Application of the waiver principle would not be inconsistent with fundamental fairness in this case because defendant's letter to the trial judge indicates that she knew of Dolan's whereabouts prior to the hearing on post-trial motions, and defendant could have raised what she characterizes as "newly discovered evidence" on direct appeal. A judgment of the appellate court on appeal from conviction is *res judicata* regarding all issues which were raised or could have been raised on direct appeal. *People v. Smalley* (1975), 33 Ill. App. 3d 677, 338 N.E.2d 193.

We also conclude that Dalziel's testimony, even if viewed as perjured, did not contribute to defendant's conviction. (*People v. Shannon* (1975), 28 Ill. App. 3d 873, 329 N.E.2d 399.) On direct appeal this court concluded that defendant had been found guilty beyond a reasonable doubt based upon circumstantial evidence as well as upon direct testimony. The court stated: "The conclusive nature of the evidence tended to prove that the defendant, from the top of the landing, shot her husband while he was descending the stairs." 27 Ill. App. 3d 988, 1001, 327 N.E.2d 546, 559.

■■ At most, the "newly discovered evidence" presented by defendant was merely cumulative because Dalziel's testimony had already been contradicted at trial by both Mr. and Mrs. Jacovac, and Dalziel had been cross-examined as to his personal relationship with Officer Marinelli. In view of the strong circumstantial evidence against defendant, Dolan's affidavit cannot be considered to be conclusive of defendant's innocence. To warrant a new trial based on newly discovered evidence, the new evidence must be of such a conclusive character that it would probably change the result on retrial, and it must not be merely cumulative. *People v. Allen* (1976), 35 Ill. App. 3d 342, 341 N.E.2d 431; *People v. Hughes* (1973), 11 Ill. App. 3d 224, 296 N.E.2d 643; *People v. Howze* (1972), 7 Ill. App. 3d 60, 286 N.E.2d 507.

The post-conviction petition is not a vehicle to be used to relitigate the

defendant's guilt or innocence, but is a means to determine whether defendant has been denied constitutional rights. (*People v. Funches* (1972), 9 Ill. App. 3d 372, 292 N.E.2d 187.) On trial and on direct appeal, the court resolved the issue of reasonable doubt against defendant and the determinations are *res judicata*.

■■ The allegations that the State used perjured testimony which led to the defendant's conviction are conclusionary in nature. Defendant has failed to support her conclusionary allegations of perjury with legally available specific factual data. Such is essential in order for the charges made in defendant's petition to require an evidentiary hearing in a post-conviction proceeding. (*People v. Shannon* (1975), 28 Ill. App. 3d 873, 329 N.E.2d 399.) Defendant has attempted merely to relitigate her guilt or innocence. This she cannot do in this proceeding.

For these reasons we conclude that as a matter of law, no evidentiary hearing on the motion of defendant for a new trial based upon newly discovered evidence was warranted. Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON and ROMITI, JJ., concur.