(No. 44369.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. HERBERT MARTIN, Appellant.

*Opinion filed January 23, 1974.*

323

WARD, J., took no part.
SCHAEFER, J., dissenting.

Jason E. Bellows, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, and Kenneth L. Gillis and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, Herbert Martin, appeals from the judgment of the circuit court of Cook County denying, after an evidentiary hearing, the relief sought in his petition filed under the provisions of the Post-Conviction Hearing Act (Ill. Rev. Stat. 1971, ch. 38, par. 122—1 *et seq.*). Petitioner was convicted of unlawful sale of narcotic drugs, the appellate court affirmed (*People v. Martin,* 74 Ill. App. 2d 431), his post-conviction petition was denied without an evidentiary hearing, and this court reversed and remanded

(46 Ill.2d 565) with directions to conduct an evidentiary hearing.

The pertinent allegations of the post-conviction petition are set forth in our earlier opinion and in substance charge that at petitioner's trial Robert Buonauro, a narcotics addict, testified that he had not been paid or given money during the seven years he had acted as a police informer, that police officer Simpson testified that Buonauro was paid nothing and served as an informer without compensation, and that in another narcotics trial held five days earlier Officer Nadile, who worked with Simpson, had testified that Buonauro was an active informer and was occasionally paid money from a contingency fund. At the post-conviction hearing following remand Officer Simpson testified that to his knowledge no police officer had paid informer Buonauro any money, that Buonauro had never at any time asked him for money, that it was possible that other officers had paid Buonauro and that if Officer Nadile had paid Buonauro it was without his knowledge. He testified further that he had never done anything for Buonauro nor interceded in his behalf, and that he expected Buonauro to give information in petitioner's case for nothing because he held a grudge against his co-defendant.

Police officer Nadile, Simpson's partner for several years, testified that Officer Simpson had "a very strict conviction" that informers should not be given financial compensation by the police department and to his knowledge Simpson had never paid money to Buonauro or any other informer. Insofar as his paying money to the informer, his testimony leaves no doubt that when Buonauro testified that he had never been paid or given money as an informer, he lied.

Police officer Demke, the third member of the police team involved in petitioner's arrest, testified that Simpson "frowned on" the practice of paying informers and although he had worked with Nadile and Simpson for

some period of time he did not know that Nadile gave Buonauro and other informers money. Demke had given informers, including Buonauro, money on occasion.

In our earlier opinion we said "It is established beyond doubt that the prosecution's use or reliance on testimony known to be false is a practice so lacking in fundamental fairness as to deprive an accused of due process of law. (*Napue v. Illinois* (1959), 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173; *Pyle v. Kansas* (1942), 317 U.S. 213, 87 L. Ed. 214, 63 S. Ct. 177; *Imbler v. Craven* (1969), 298 F. Supp. 795; *Curran v. Delaware* (3d Cir. 1958), 259 F.2d 707; see also *Mesarosh v. United States* (1956), 352 U.S. 1, 1 L. Ed. 2d 1, 77 S. Ct. 1; *Mooney v. Holohan* (1935), 294 U.S. 103, 79 L. Ed. 791, 55 S. Ct. 340.) And where, as here, the falsity lies in the testimony of a law enforcement officer giving evidence favorable to the prosecution, the *Imbler* and *Curran* decisions establish that it matters not that the prosecuting attorney himself does not have knowledge of the falsity, inasmuch as 'the prosecution is charged with the knowledge of its agents including the police.' (*Imbler,* 298 F. Supp. at 806.) Nor, as the trial court apparently believed, does the false testimony have to relate to a material issue to fall into the field of fundamental unfairness. *Napue,* and the decisions of this court in *People v. McKinney,* 31 Ill.2d 246, and *People v. Lueck,* 24 Ill.2d 554, as well, demonstrate that due process is likewise denied where the falsity occurs in testimony going to the credibility of a witness." 46 Ill.2d 565, at 567-8.

In *People v. Bracey,* 51 Ill.2d 514, 520, we said that "Once the condemned use of perjured testimony has been established, *Chapman* [*Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824] dictated that the burden then be placed on the State to establish beyond a reasonable doubt that the perjured testimony did not contribute to the conviction."

The transcript of the proceedings at petitioner's trial

shows that on the date of the narcotics sale for which petitioner was convicted Buonauro was taken to the police station and thoroughly searched, and that he possessed no narcotics or money. He was given two ten-dollar and three one-dollar bills. The serial numbers of the currency were recorded, and the money was dusted with ultra-violet powder. Shortly afterwards Buonauro and petitioner held a conversation, then entered a liquor store, and when they emerged very shortly thereafter they were apprehended and searched. The searches disclosed that Buonauro possessed a packet of heroin and thirteen dollars while petitioner possessed nine dollars in currency, some change and a package of cigarettes. The missing ten-dollar bill was found in the cash register of the liquor store. Ultra-violet powder was found on petitioner's hands and on his trouser pockets.

Buonauro's credibility was assailed at the trial and it was shown that he had taken narcotics the morning of his testimony, had been previously convicted of four offenses, had a criminal charge presently pending against him and was a narcotics addict who supported his addiction by shoplifting and selling the stolen goods. The jury was instructed that the testimony of an admitted narcotics addict must be carefully scrutinized and that if the informer-witness was not kept under close observation by the police at the time of the alleged sale of the narcotics his testimony was not sufficiently corroborated and the petitioner must be acquitted. On this record we hold that the People have sustained the burden and shown beyond a reasonable doubt that the perjured testimony did not contribute to the conviction. The judgment of the circuit court of Cook County is therefore affirmed.

*Judgment affirmed.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.

MR. JUSTICE SCHAEFER, dissenting:

The convictions of defendant Herbert Martin and his co-defendant, Dewright Baxter, rested largely on the testimony of the informer, Buonauro. His name had not been included in the list of witnesses required to be furnished to the defendants by the prosecution. Nevertheless he was permitted to testify over their objections. (*People v. Martin*, 74 Ill. App. 2d 431, 433.) He lied when he testified "that he had never been paid or given money" for his services during the seven years he had served as an informer. In its former opinion in this case this court said: "It there appears [in the transcript of the defendant's original trial] that the informer testified to a controlled purchase of drugs from defendant under circumstances wherein the informer was the only eyewitness to the actual sale. And of even greater significance, it discloses that officers Simpson and Nadile were both working with the informer when defendant's arrest was effected. Yet, the petition and supporting transcripts establish that Nadile testified in a criminal proceeding to a long-standing arrangement with the informer whereby the latter was paid for his services if an arrest was made and if funds were available, whereas his partner, Simpson, testified categorically in defendant's trial five days later that the informer had never been paid but gave his services gratuitously." 46 Ill.2d 565, at 568.

The opinion of the majority in the present case rejects the prosecution's contention that no error occurred because it was not established at the post-conviction hearing that Officer Simpson had lied at the trial. I concur in that conclusion, for whether that officer deliberately lied or not, it was unmistakeably proved by the testimony of other officers that Buonauro had lied when he testified that he was not a paid informer.

But I cannot agree that the error was harmless beyond a reasonable doubt. The importance of Buonauro's testimony is apparent from the opinion of the appellate court

on the co-defendant's appeal. There the court said: "*** we think there was sufficient corroboration of Buonauro's testimony to permit the jury to determine the credibility of his testimony concerning the nature of his conversation with defendant [Baxter]. If Buonauro's testimony is believed, there is sufficient evidence to sustain a conviction regardless of the fact that he had no physical contact with either the narcotics or the money." (*People v. Baxter* (1966), 74 Ill. App. 2d 437, 444-445.) I think now, as the appellate court thought then, that Buonauro's credibility was critical to a conviction of the defendant for the sale of narcotics. And we cannot know how the jury would have appraised his credibility if he had not been put before them in a completely false light.