THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILBUR N. HILLIARD, JR., Defendant-Appellant.

First District (3rd Division)   Nos. 62960, 77-287 cons.

Opinion filed October 11, 1978.—Modified on denial of rehearing November 22, 1978.

James J. Doherty, Public Defender, of Chicago (Allan R. Sincox and Frances Sowa, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

The defendant, Wilbur N. Hilliard, was found guilty by a jury of murdering James Dulin. While his direct appeal was pending in this court, the defendant filed petitions for relief in the alternative under section 72 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72) or under the Illinois Post Conviction Hearing Act (Ill. Rev. Stat. 1975, ch. 38, pars. 122—1 through 122—7). The defendant contended in his petitions as supplemented that perjury by the State's two primary witnesses, his stepson, Johnny Obie, who recanted his trial and grand jury testimony and his wife, Mary Hilliard, entitled him to section 72 relief and constituted a due process violation cognizable in a post-conviction petition. The defendant's petitions also questioned whether prosecutorial misconduct had denied him a fair trial and whether he was denied effective assistance of counsel by the way his retained counsel conducted his trial. The defendant's direct appeal raised the issues of proof beyond a reasonable doubt and prosecutorial misconduct in instances other than those relied upon in the post-conviction petition which defendent contended denied him a fair trial. At the defendant's request, his direct appeal was stayed pending a hearing in the circuit court on his petitions for section 72 and post-conviction relief. The circuit court dismissed the petitions on the State's motion without an evidentiary hearing; this court has consolidated the defendant's appeal from that dismissal with his direct appeal.

In this opinion we consider only the propriety of the dismissal without an evidentiary hearing of the section 72 petition which alleged Obie's recantation and Mary Hilliard's perjury.

Hilliard's defense at trial was that he never knew Dulin and never saw him alive. He testified that in the early morning hours of the day of the murder he opened the basement door of his residence to let his two dogs into the basement. He did not enter the basement at that time, but returned to his bedroom and went to sleep. A few minutes later, at approximately 6 a.m., his wife told him the dogs were barking and fighting in the basement and asked him to investigate. When he entered

the basement, the defendant discovered Dulin's body with numerous stab wounds; he then notified the police.

The only witness who testified that he saw the murder take place was the defendant's stepson, Johnny Obie. Obie was 11 years old at the time of the murder and 12 years old when he testified at trial. Approximately 20 months after the trial he recanted both his trial and grand jury testimony by executing an affidavit stating that he had lied both at trial and before the grand jury, when he testified he saw his stepfather stab a man to death. He stated in his recanting affidavit that his mother had told him what to say to the police and at trial because she wanted to get rid of the defendant, her husband. To corroborate Obie's recantation, defendant submitted a lie detector test Obie took about the time he executed the affidavit in which his answers completely contradicted his grand jury and trial testimony. In the report, the examiner who administered the test concluded that Obie told the truth during the polygraph examination.

As additional support for his section 72 plea that Obie's recantation was valid and entitled him to relief, the defendant pointed out that several significant discrepancies existed between Obie's testimony at trial and his grand jury testimony. At trial Obie testified that he watched his stepfather stab the victim repeatedly although he had testified before the grand jury that he saw his stepfather stab the man only once. He testified before the grand jury that the defendant cut their two dogs loose with a wire cutter in their apartment and took both of them with him when he went into the basement where the victim's body was found. At trial, however, Obie testified that he untied the dogs and kept one, while the defendant took the other when they entered the basement. Before the grand jury, Obie testified that he followed his stepfather to the basement, and then waited outside the door until the defendant called for him. But at trial he testified that he and his stepfather entered the basement at the same time with the dogs. Obie's grand jury testimony was that after the stabbing, the defendant put the knife in a sink in the basement and washed it off; however at trial Obie stated that the knife was wiped off with a rag, and emphatically denied it was cleaned in any other manner.

In support of his section 72 petition, the defendant also filed the affidavit of his mother, Evelyn Hilliard, sworn to on the same date as Obie's affidavit. His mother's affidavit stated that on several occasions since trial the defendant's wife, Mary, had admitted to Evelyn Hilliard and other members of her family that she lied at the trial; that in the year following defendant's conviction Mary gave her some money as a birthday present and then started to cry, saying she was sorry she had lied to put the defendant in jail; and that Mary's testimony at trial that she had not read a statement which defense counsel used in examining her was not

true because Evelyn saw and heard Mary Hilliard give and read the statement before she signed it.

■■ Initially, we note that the judge who presided at trial became a member of this court before the defendant's post-conviction petitions were considered by the circuit court, and the circuit court judge who dismissed the petitions had neither observed Obie nor heard any of the witnesses in this case. For that reason the observation in *People v. De Mario* (1969), 112 Ill. App. 2d 420, 425, 251 N.E.2d 274, that the credibility of the witnesses at such a hearing is a matter primarily for the trial court, has no application to this proceeding because there the same judge presided at the trial and at the section 72 hearing. Because the section 72 petition was dismissed without an evidentiary hearing, this court is in as advantageous a position as the circuit court judge to assess Obie's recantation.

The State, relying on *People v. Marquis* (1931), 344 Ill. 261, 176 N.E. 314, and *De Mario*, argues that a showing of mere recantation of prior testimony is not sufficient to require an evidentiary hearing. The defendant argues in reply that the record demonstrates more than mere recantation of prior testimony. He contends that Obie's recantation is corroborated by the polygraph examination and supported by the inconsistencies between his trial and grand jury testimony. The defendant also argues that Obie's recantation, insofar as it states that his mother told him to lie, is supported by Evelyn Hilliard's sworn statement that Mary Hilliard admitted she had lied, as well as by Mary's admissions at trial that previous statements she had given were untrue. In addition, the defendant notes that the trial testimony of Mary and Obie was that before the police arrived they watched a certain television program together. The defendant contends his petitions demonstrate that this was manufactured testimony because the program was not shown on television until after the police had arrived. The defendant also argues that both witnesses testifying to the same falsehood demonstrates that Obie's mother told him what to say, as Obie's affidavit alleged.

■■■ Section 72 affords a remedy to obtain relief, where warranted, from a judgment based on perjured testimony. (*People v. Jennings* (1971), 48 Ill. 2d 295, 298, 269 N.E.2d 474; *People v. Lewis* (1961), 22 Ill. 2d 68, 70, 174 N.E.2d 197.) The purpose of such a petition is to bring before the court facts which, had they been known at the time judgment was entered, would have prevented its rendition. (*People v. Hinton* (1972), 52 Ill. 2d 239, 243, 287 N.E.2d 657; *People v. Yarbar* (1976), 43 Ill. App. 3d 668, 670, 357 N.E.2d 166.) Thus, the question raised by the defendant's petition is whether Obie's recantation was credible, for if Obie had testified at trial in a manner consistent with his recantation affidavit, we do not see how the defendant could have been found guilty. Section 72

petitions alleging recantation of prior testimony may not require an evidentiary hearing in every instance where the trial judge does not preside at the post-conviction proceeding; but, on the record before us, we do not understand how the question of the credibility of Obie's recantation could be resolved by a judge who never heard Obie testify. It is not necessary to decide whether the circuit court judge or this court should consider the polygraph examination result because sufficient evidence to require an evidentiary hearing on the section 72 petition has been offered. It consists of Obie's affidavit supported by the inconsistencies between his grand jury and trial testimony, Evelyn Hilliard's affidavit and the account of the viewing of the television program. We, therefore, agree with the defendant's contention that he is entitled to an evidentiary hearing on the validity of Obie's recantation.

Decisions on the significance of recantation by an important witness after conviction do not support the State's position because in each of those cases, except in *Marquis*, the outcome was based upon an evidentiary hearing. (*People v. Veal* (1978), 58 Ill. App. 3d 938, 989, 374 N.E.2d 963; *People v. Bickham* (1974), 23 Ill. App. 3d 1074, 1079, 320 N.E.2d 478; *De Mario*.) For example, in *De Mario* the recanting witness testified and was cross-examined in a section 72 proceeding. Even in *Marquis*, where no evidentiary hearing appears to have been requested or conducted on the credibility of a witness who recanted her trial testimony, the court acknowledged that in extraordinary and unusual cases a witness's recantation is sufficient ground for a new trial. Given Obie's recantation and the supporting evidence, his testimony as a 12-year-old boy that his stepfather awakened him one winter morning at 5:15 and then took him and the two dogs into the basement to watch the stepfather stab a sleeping man numerous times is sufficiently unusual to warrant, under the language in *Marquis*, an evidentiary hearing to search out the truth.

The State argues that Obie's affidavit is inconsistent with the evidence that a week after the murder he pointed out to the police a knife on a roof of a garage near his home. Yet, while both the circuit court judge and the State assumed that this knife was the murder weapon, the only evidence that it was in fact the weapon used to kill Dulin was Obie's trial testimony and his statement to the police. An evidentiary hearing will make it possible to resolve whether Obie actually witnessed his stepfather throw the knife on the garage roof immediately following the murder, as Obie testified, or whether it was thrown there a few days later, as the defendant—who claimed he found the knife in the basement while cleaning up after the murder—testified.

The State also argues, as the circuit court judge assumed in reliance on

*Jennings*, that even if Obie's affidavit and the other evidence supporting the affidavit were credible, section 72 relief would be appropriate only after the defendant also showed both that his failure to discredit Obie's testimony at trial was not attributable to his own fault or neglect and that Obie's testimony probably controlled the outcome of the trial. Thus, the circuit court judge concluded that even if Obie's testimony were proved untruthful by the recantation and other evidence, that in itself would not entitle the defendant to section 72 relief, unless the other showings required by *Jennings* were made. However, we believe that the standard advanced by the State relying upon *Jennings* does not conform with the proper rule subsequently announced in *People v. Bracey* (1972), 51 Ill. 2d 514, 283 N.E.2d 685, and in *People v. Hood* (1977), 45 Ill. App. 3d 425, 359 N.E.2d 484. These decisions establish the correct standard—that when the defendant has shown that perjured testimony has been used, the burden shifts to the State to establish beyond a reasonable doubt that the improper testimony did not contribute to the conviction. Here, the record contains no effort by the State to make such a showing. And, as we commented above, based on the record now before this court, there can be little doubt that the trial testimony of Obie, the only eyewitness, contributed significantly to the defendant's conviction. Therefore, the circuit court judge applied an erroneous standard, where applying the correct standard enunciated in *Bracey* and *Hood* would have led to a different result.

■ The State also asserts that because the defendant alleged the State knowingly used perjured testimony, he would not be entitled to post-conviction relief absent a showing of knowing use. We disagree; a post-conviction petition establishing perjury need not also allege facts showing that the perjury was used knowingly. (*People v. Shannon* (1975), 28 Ill. App. 3d 873, 329 N.E.2d 399.) The court said in that case:

> "* * * [T]he use of the State's judicial process to enforce a right of the People, the violation of which is based upon the perjured testimony of a private individual, constitutes State action whether or not the State knew that the testimony was perjured. Known to the State or not, the use of its judicial process to convict and imprison on perjured testimony is a miscarriage of justice which is abhorrent to fundamental fairness and as such is intolerable." (28 Ill. App. 3d 873, 878.)

Regardless of what the defendant is required to establish to demonstrate a constitutional violation, it is clear that even an innocent or unknowing use of perjured testimony justifies section 72 relief. (*Jennings; Lewis.*) Therefore, the defendant has alleged more than he was required to allege for section 72 relief, and proof of knowing use is not essential to the relief he seeks.

■ Finally, the State argues that the defendant is foreclosed from relying

on the inconsistencies between Obie's trial and grand jury testimony in his post-conviction petitions because he failed to refer to them in his brief filed in his direct appeal. However, the defendant in his section 72 petition is relying on the inconsistencies in Obie's testimony in a different way than he would have in his direct appeal. If referred to in his direct appeal, these inconsistencies would have been used to support the defendant's contention that the proof at trial did not show his guilt beyond a reasonable doubt. The defendant relies on those inconsistencies here only to demonstrate that there was sufficient support for Obie's recantation to warrant an evidentiary hearing. Thus, the defendant is not foreclosed from relying on these inconsistencies to support his section 72 petition. In any event, we would do a disservice to justice were we to dispose of the serious challenge to defendant's conviction raised by Obie's affidavit on the technical ground of waiver.

■■ The bottom line, then, is that the section 72 petition should not have been dismissed without a determination of the truth or falsity of Obie's affidavit. The circuit court judge was in no position to make this determination without an evidentiary hearing. An adversary proceeding is necessary in order to determine whether Obie's trial testimony was true.

Accordingly, the dismissal of the section 72 petition is reversed and this cause is remanded for an evidentiary hearing on the issue of Obie's recantation. We do not hold that an evidentiary hearing is required with respect to whether Obie's mother's testimony was perjurious, because Evelyn Hilliard's affidavit—which consists in large part of conclusions, rather than statements of fact—is not sufficient to establish that her daughter-in-law's testimony was untrue. However, the inquiry which we are directing into whether Obie's recantation was truthful may require an exploration of the extent to which both Evelyn and Mary Hilliard influenced Obie's conduct, including his recantation, and the truth of Evelyn Hilliard's affidavit.

We are not ruling on the other issues raised by the direct appeal and the petition for post-conviction relief at this time, but reserve ruling on them until the evidentiary hearing has been completed. At that time, upon motion filed in this court by either party, this court will consider such other issues as may then be necessary or appropriate.

Reversed and remanded for further proceedings with respect to the section 72 petition.

McNAMARA and McGILLICUDDY, JJ., concur.