THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE LOVITZ, Defendant-Appellant.

Second District   No. 2—83—0413

Opinion filed September 7, 1984.—Rehearing denied October 15, 1984.

G. Joseph Weller and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Eugene Lovitz, the defendant, appeals from the denial of his post-conviction petition following an evidentiary hearing. Defendant's conviction and sentence for murder had been considered and affirmed by this court on direct appeal. (See *People v. Lovitz* (1976), 39 Ill. App. 3d 624, *appeal denied* (1976), 64 Ill. 2d 597, *cert. denied* (1977), 434 U.S. 842, 54 L. Ed. 2d 107, 98 S. Ct. 141.) The defendant's post-conviction petition was denied without an evidentiary hearing, and we remanded with directions to conduct an evidentiary hearing, based on an affidavit that the State's firearms expert who testified at trial would, on the basis of additional information made available after the trial, have a different opinion as to whether the weapon could have discharged accidentally. (*People v. Lovitz* (1981), 101 Ill. App. 3d_704.)

We also remanded with directions to take evidence relating to the issue of incompetence of counsel, based on trial defense counsel's affidavit that he was unprepared for trial.

## I

The theory of the defense in the murder trial, essentially, was that defendant's wife produced the Llama .380 semi-automatic pistol, threatened defendant and their child with it, and the gun accidentally discharged while in the wife's hand when defendant and she fell to the floor. This theory was supported by Sergeant Robert Wilson of the Du Page County sheriff's department, who testified at trial that a puncture wound measuring two millimeters by four millimeters was present on decedent's right hand near the rear portion of her thumb. Defendant's firearms expert, George Nonte, had testified at trial that the wound on decedent's hand was consistent with an injury from firing a Llama .380.

Our remand was on the basis that the affidavit of Joseph Nicol, the State's firearms expert, indicated that it would not be inconsistent for the weapon to have accidentally discharged during the struggle in the manner described by the defendant at the original trial, in which he and the decedent purportedly slid down a wall and impacted with the floor; and, further, that there are positions in which the gun could have been oriented at the time it discharged so as to cause the gun slide to create the puncture wound shown on decedent's hand. We remanded for an evidentiary hearing to consider the scope of Nicol's revised opinion relating to the weapon and the effect, if any, it had upon the outcome of the case, as directed to the essential issue of whether defendant's right to a fair trial was violated. *People v. Lovitz* (1981), 101 Ill. App. 3d 704, 708.

On remand, there was testimony that a design defect exists in the Llama .380 pistol which could permit the gun to fire when the hammer is fully cocked without any pressure applied by a human agency to the grip safety. That this design defect exists was not contested.

Joseph Nicol, a well-known firearms expert, had testified at the original trial on behalf of the State that, based upon test firings of the pistol and high-speed photographs taken as it discharged, it was his opinion that the slide would clear the back of the hand by about one-half inch. He said, "It would be highly improbable for this weapon to have struck the hand of the deceased in the area described." When asked on cross-examination whether it was impossible for the gun to be held in a position to cause such a wound, he responded: "I was unable to determine a position *** that would expose the upper surface

of the thumb so that a wound would be received *** [in] my opinion [there is] no position in which this gun could be held and fired [that] would produce a mark on the shooter's hand ***." Nicol's opinion was also based upon the velocity and the force of the recoil of the pistol and his belief at that time that the gun would not fire unless the grip safety was engaged and the trigger squeezed.

In the post-conviction hearing Nicol testified that, based on the information of the design defect, his testimony given at the original trial would have been modified:

"Q. In what respect would it have been modified, sir?

A. I would have stated that the — that a nonhuman activation was possible; that is, by some mechanical force on either the hammer, bringing it to the position that was shown or on the top spur of the grip safety.

Q. Would it have caused the gun to discharge?

A. It's possible to cause the gun to discharge with that kind of force, yes.

Q. And, at this time, sir, it is, also, with that other knowledge, it would be then your opinion or would have been your testimony that the hand of the shooter could have been hit by the slide; is that correct?

A. If this other activation occurred, that would be possible, although I think it is not a highly probable situation, simply because of the speed with which the hand or the object that strikes the hammer or the — or activates the grip safety must also be elevated to the point where the slide will strike it. But certainly I would agree that this is a possibility."

Nicol was further asked on direct examination as to whether his testimony would be different than that given at trial as to how the wound on the decedent's hand could have been caused. He acknowledged "that it's possible for *** that wound to have occurred *** if the hand of the decedent had been in a position to be struck by the slide." When asked, however, whether his opinion would have changed, also, as to whether the weapon would have been accidentally or unintentionally discharged, he answered:

"A. No, I acknowledge that there was a remote possibility for the gun to have been accidentally discharged by things that would rotate the grip safety with the proper dynamics of the system. So, whatever happened, had to occur within milliseconds in order for the slide to come back and strike, after the hammer was released."

When he was asked how much time it would take for the slide to

come back after sufficient force was exerted upon the bullet in the chamber to cause discharge of the bullet, he answered that it would be about 10 milliseconds.[1]

On cross-examination, Nicol explained that, in order for the gun to cause a mark on the shooter's hand, the shooter would have to remove his hand from the area of the grip safety, a blow must occur on the top of the hammer or grip safety, and the shooter's hand must move back into a position in which it could be hit by the rearward moving slide. These movements must all occur within 15 milliseconds. He further testified that his opinion had not changed as to the probability of the gun striking the hand, and that, due to the specific mechanics required and the "very, very fast action," it would be "difficult, if not impossible" for the shooter's hand to be struck.

On further cross-examination, Nicol testified that, while he could not give a mathematical figure to any possibility, "[i]t would *** require a number of things to coincide at one point in order for all — for all of these to happen, to allow the discharge of the weapon in the — under the conditions as I know it at this time."

For the newly discovered evidence of the design defect of the Llama .380 pistol to lend sufficient support for the grant of a new trial, it must be of such conclusive character that it will probably change the result on retrial, must be material to the issue but not merely cumulative, must have been discovered since the trial and must be of such character that it could not have been discovered prior to trial by the exercise of due diligence. (See *People v. Molstad* (1984), 101 Ill. 2d 128, 134.) Even where newly discovered evidence is considered in a post-conviction petition, the defendant raises no constitutional question in support of the petition and is not entitled to relief where there is other ample evidence which establishes defendant's guilt beyond a reasonable doubt. *People v. Ferguson* (1981), 102 Ill. App. 3d 702, 718-19.

■ In its memorandum opinion, the trial court held that defendant was not entitled to a new trial in that "[t]he latent defect and the modified opinion is not of such a conclusive character nor of sufficient probative force or weight that it will probably change the result on retrial in view of all of the evidence at the time of trial." We agree. In our opinion on direct appeal, we noted that the testimony of the defendant as to the occurrence, even if it were reasonable, could well have been disregarded by the jury in view of testimony that the

---

[1]A millisecond is one thousandth of a second. Webster's Third New International Dictionary 1435 (1971).

defendant had lied to various witnesses about the circumstances surrounding his wife's death. We also noted that, independent of the defendant's testimony, there was evidence establishing defendant's guilt in the fact that the decedent was shot by a gun belonging to the defendant and found in his possession when he surrendered to the police. There are the further facts that defendant had publicly waved a pistol at his wife on at least two prior occasions, and he fled the scene of the crime. (*People v. Lovitz* (1976), 39 Ill. App. 3d 624, 632.) We therefore agree that the post-trial modification of the State's expert witness' opinion is not of the nature that would change the trial's outcome and that it raises no constitutional basis for a retrial.

■ Defendant has also argued that he is entitled to a new trial on the basis that Nicol's opinion at trial was based on a false premise and should be equated with perjured testimony.

Perjury has been defined as "willfully, corruptly and falsely testifying in a matter material to the issue or point in question." (*In re Obartuch* (1944), 386 Ill. 323, 332; *People v. Drake* (1978), 63 Ill. App. 3d 633, 635.) Since defendant has made no showing that Nicol's opinion at trial was known by him to be false, the subsequent modification in his opinion cannot be equated with perjury. In addition, it is insufficient to show that perjury took place during trial without proof that the State knowingly used perjured testimony. (*People v. Berland* (1983), 115 Ill. App. 3d 272, 274.) Defendant has not shown that the State used Nicol's testimony knowing it to be false and, accordingly, is not entitled to a new trial on this alternative theory.

Defendant has also raised the question of whether the trial judge erred in excluding the testimony of Du Page County Sergeant Robert Wilson as to tests he conducted with the murder weapon, and in excluding his resulting opinion, produced at the post-conviction hearing, that he had conducted a series of tests from August to December of 1973 by firing a Llama .380 pistol, which was in evidence in another case, a number of times, so as to simulate the likely position in which the gun would have been held by the decedent in order to cause the wound on her hand. He said it consistently produced a puncture mark at the base of his right thumb, precisely the same size as that found on the hand of the decedent and appearing at the same angle and distance from the tip of the thumb as that on decedent. It was his opinion, based on the tests and the comparisons of photographs, that the mark on the decedent's right hand could have been produced by the firing of the Llama .380 while it was held in her hand. This testimony had been precluded by the trial judge in the murder trial, apparently on the basis of his ruling that the witness was not qualified as an ex-

pert to testify to his own test results or to render an opinion on them. This issue, however, is not properly before this court. In our previous opinion, we determined that the case was to be remanded for an evidentiary hearing on the issues of the modified expert opinion of Nicol and incompetency of counsel. We deemed the remaining issues waived. *People v. Lovitz* (1981), 101 Ill. App. 3d 704, 709.

■ Moreover, the argument asserted here is that the trial judge erred in excluding the testimony on the basis of qualification, whereas the defendant's allegation in his post-conviction petition is that the State failed to divulge this information in violation of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. An issue not raised in the post-conviction petition need not be considered on appeal from the denial of the petition. (*People v. Meyer* (1974), 20 Ill. App. 3d 1032, 1033.) Accordingly, we do not consider the issue of Sergeant Wilson's testimony at the post-conviction hearing as directed to the issue of whether defendant is entitled to a new trial on the basis of newly discovered evidence.

## II

Defendant has also argued that he was denied effective assistance of counsel at trial and is thereby entitled to a new trial. He maintains that his trial counsel failed to adequately investigate or prepare for trial, resulting in his failure to discover evidence or present witnesses favorable to the defense. He specifically alleges that counsel's failure to interview numerous State witnesses, particularly Sergeant Wilson and Joseph Nicol, his failure to make an offer of proof as to Wilson's report of the tests he conducted on a Llama .380, his failure to contact George Nonte, the defendant's firearms expert witness, until the middle of the trial, and his failure to look for a barmaid who could testify that the victim was intoxicated at the time of the shooting, evidenced incompetence of counsel.

Trial counsel, Wayne B. Giampietro, testified that he was retained by the defendant in late September or October of 1973 and that defendant was indicted in November of 1973. The case was set for trial three or four different times and eventually went to trial on April 1, 1974. Giampietro was engaged in a jury trial in Federal district court which lasted from February 25, 1974, through March 31, 1974. During that period of time, he filed one written motion for continuance and made at least one oral motion. On March 28, 1974, he called the trial judge and requested a continuance for the Lovitz trial, but the judge said the Lovitz case would in essence "be held day-to-day until the case that [he] was then presently engaged in was com-

pleted." He did not request a continuance on April 1 because he knew no continuance would be granted and it would have been a futile act. He stated that on April 1 he was not as prepared as he would have liked to have been and that he was physically and mentally tired. He explained what he would have done to better prepare for the trial if he had been granted a continuance on April 1. He did admit that he "had in mind all of the points [he was] going to raise, all of the legal arguments."

■ The trial court concluded that "the advocacy of Mr. Giampietro was vigorous, solid and aggressive," his examination of the witnesses was "thorough and complete," and his conduct was "professional and thorough in all respects." Any alleged errors, such as failure to seek a continuance on April 1, were found to be mere errors in judgment and discretion which did not overcome the presumption of competence. Furthermore, it found that defendant was not prejudiced by counsel's conduct and that different trial strategy would not create a different result in that the evidence sufficiently established defendant's guilt beyond a reasonable doubt. We agree.

While incompetence of counsel may properly be addressed in a post-conviction petition (*People v. Churchill* (1981), 92 Ill. App. 3d 1006, 1008), the defendant must demonstrate that "the incompetence produced substantial prejudice to the defendant without which the result would probably have been different" (*People v. Royse* (1983), 99 Ill. 2d 163, 168, 170). It is well settled that a review of competence will not be appraised on the basis of matter involving the exercise of judgment, discretion or trial tactics, and whether counsel was incompetent must be assessed on the basis of the entire record, and not isolated instances. *People v. Starks* (1983), 122 Ill. App. 3d 228, 234, 236.

An examination of Giampietro's performance at trial indicates that he vigorously examined Wilson and Nicol while on the stand, regardless of his failure to personally interview them. Defendant's contention that Giampietro failed to find a barmaid who could testify to decedent's intoxication at the time of the shooting is without merit. This claim was discussed in the first appeal, in which this court concluded the testimony was not "of such a conclusive character that it would probably change the result on retrial." (*People v. Lovitz* (1976), 39 Ill. App. 3d 624, 633-34.) Accordingly, defendant has not here shown that he was prejudiced by the exclusion of this testimony. Also, no prejudice has been shown by Giampietro's failure to contact Nonte until the trial had already commenced. Before he testified, Nonte was able to test the murder weapon. He then testified favorably to defend-

ant's claim that the gun accidentally discharged while being held by decedent. Finally, Giampietro's failure to make an offer of proof as to Sergeant Wilson's report is not a question properly before this court, in that the merits of the exclusion of this evidence were not raised in the post-conviction petition. See *People v. Meyer* (1974), 20 Ill. App. 3d 1032, 1033.

We conclude that incompetence of counsel has not been demonstrated.

The determination of the trial judge in a post-conviction proceeding will be upheld unless it is manifestly erroneous. (*People v. Bracey* (1972), 51 Ill. 2d 514, 517; *People v. Banks* (1984), 121 Ill. App. 3d 279, 288.) We conclude that the trial court's determination to deny the post-conviction petition is not manifestly erroneous. We therefore affirm the judgment of the circuit court of Du Page County.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.