660 N.E.2d 964 (1995)
169 Ill.2d 94
214 Ill.Dec. 257
The PEOPLE of the State of Illinois, Appellee,
v.
Patrick BROWN, Appellant.
No. 78128.
Supreme Court of Illinois.
December 21, 1995.
Rehearing Denied January 29, 1996.
*965 Gregory J. Smith, Smith & Jones, Waukegan, for appellant.
James E. Ryan, Attorney General, Springfield, and Michael D. Clary, State's Attorney, Danville (Norbert J. Goetten, Robert J. Biderman and James Majors, of the Office of the State's Attorneys Appellate Prosecutor, Springfield, of counsel), for the People.
Justice MILLER delivered the opinion of the court:
Following a jury trial in the circuit court of Vermilion County, defendant, Patrick Brown, was found guilty of one count of aggravated battery of a child (Ill.Rev.Stat.1989, ch. 38, par. 12-4.3(a)) and three counts of cruelty to children (Ill.Rev.Stat.1989, ch. 23, par. 2368). Defendant's convictions and sentences were affirmed on appeal to the appellate court. (No. 4-90-0806 (unpublished order under Supreme Court Rule 23).) Defendant thereafter filed a pro se petition for post-conviction relief (see Ill.Rev.Stat.1989, ch. 38, pars. 122-1 through 122-8), contending that his constitutional rights had been violated in that his convictions were based on the false testimony of one of the complaining witnesses. The trial judge summarily dismissed defendant's post-conviction petition without conducting an evidentiary hearing. (Ill.Rev.Stat.1989, ch. 38, par. 122-2.1(a)(2).) The appellate court affirmed. (No. 4-93-0322 (unpublished order under Supreme Court Rule 23).) We granted defendant's petition for leave to appeal (145 Ill.2d R. 315(a)). The sole issue presented for review is whether a post-conviction petition alleging that a defendant's conviction is based on the State's unknowing use of false testimony raises a constitutional question and thereby avoids summary dismissal. For the reasons that follow, we affirm the judgment of the appellate court.

FACTS
On April 12, 1990, defendant was initially charged by information in the circuit court of Vermilion County with one count of aggravated battery of a child. (Ill.Rev.Stat.1989, ch. 38, par. 12-4.3(a).) On September 6, 1990, an amended information was filed, charging defendant with two counts of aggravated battery of a child (Ill.Rev.Stat.1989, ch. 38, par. 12-4.3(a)) and three counts of cruelty to children (Ill.Rev.Stat.1989, ch. 23, par. 2368). The children involved were defendant's minor sons, J.B. and S.B., who were 10 and 11 years old respectively at the time of the incidents in question. Count I of the amended information alleged that defendant committed the offense of aggravated battery in that he knowingly and without lawful justification caused great bodily harm to J.B. by causing him to ingest sufficient alcohol to become intoxicated. (Ill.Rev.Stat.1989, ch. 38, par. 12-4.3(a).) Count II alleged that defendant committed the offense of aggravated battery of a child in that he knowingly and without legal justification caused great bodily harm to J.B. by striking and choking him. (Ill.Rev.Stat.1989, ch. 38, par. 12-4.3(a).) The information also alleged that defendant committed three counts of cruelty to children in that defendant willfully and unnecessarily injured the health of J.B. and S.B. by (1) causing and permitting J.B. to ingest sufficient alcohol to become intoxicated (count III), (2) striking and choking J.B. (count IV), and (3) causing and permitting S.B. to ingest sufficient alcohol to become intoxicated (count V). Ill.Rev.Stat.1989, ch. 23, par. 2368.
The incidents giving rise to these charges occurred on April 10, 1990, while J.B. and S.B. were staying with defendant at his home. The evidence introduced at trial regarding *966 the incidents in question consisted primarily of the testimony of J.B., S.B., ambulance personnel, physicians, police officers, the boys' mother and her fiance, defendant, defendant's mother, and defendant's girlfriend at the time of the incidents. J.B. and S.B. were the only two witnesses, other than defendant, who were present in defendant's home at the time defendant allegedly hit J.B. and made both boys drink alcohol. Given the issue presented in this case, we concern ourselves mainly with the testimony J.B., S.B., and defendant gave at trial.
Both boys testified at trial that defendant gave each of them a glass of whiskey and told them to drink it. J.B. described the glass as approximately seven inches tall and almost full of whiskey. J.B. stated that he drank the glass of whiskey because defendant told him to, and asserted that when defendant told him to drink the whiskey, defendant said something to the effect of "being like me." After drinking the whiskey, defendant instructed J.B. to get two cans of beer out of the refrigerator. He then told J.B. and S.B. to each drink one. After finishing the beers, J.B. testified that defendant hit him in the chest with his fists and also hit him on the head with a screwdriver. Both boys also testified that defendant choked J.B. Specifically, the boys remembered defendant choking J.B. after S.B. was unable to locate the "dope" defendant had told S.B. to get. Following the above incidents, J.B. went into seizures and had difficulty breathing. S.B. testified that during the seizure defendant was sitting on J.B. and hitting him in the chest. S.B. also stated that when J.B. began convulsing, defendant had S.B. call their mother because defendant did not know what was wrong with J.B. After this phone call, the boys' mother called an ambulance.
Police officers and ambulance personnel subsequently arrived at defendant's home, and the ambulance took J.B. to the hospital. While en route to the hospital, J.B. stopped breathing, but was resuscitated. He eventually recovered after having his stomach pumped. Results of blood tests performed on J.B. at the hospital revealed J.B. had a blood-alcohol content of 0.09. Dr. Pliura, who treated J.B. in the emergency room, testified that in his opinion the majority of J.B.'s medical problems were caused by the rapid ingestion of alcohol.
At trial, defendant admitted to giving each boy one can of beer, but denied giving the boys any whiskey or having any knowledge of them drinking whiskey. Defendant further denied ever intentionally hitting either boy and stated that the only way either boy could have been hit was if it was done accidentally.
Based on the evidence presented, the jury found defendant guilty of aggravated battery of a child based on intoxication, but not guilty of aggravated battery of a child based on striking and choking. The jury also found defendant guilty on all three counts of cruelty to children. Defendant's motion for a new trial was denied. At sentencing, the trial judge found that one count of cruelty to children merged into the aggravated battery conviction (count I). Defendant was thereafter sentenced to 25 years' imprisonment on the aggravated battery of a child conviction and to three years' imprisonment on the two remaining cruelty to children convictions. The three sentences were to run concurrently to each other and consecutively to sentences imposed in unrelated matters.
Defendant's convictions and sentences were affirmed on appeal to the appellate court. (No. 4-90-0806 (unpublished order under Supreme Court Rule 23).) Defendant thereafter filed a pro se petition for post-conviction relief. In his petition, defendant charged that he was denied his constitutional right to a fair trial because his convictions were based on the false testimony of one of the State's witnesses. Defendant asserted that after trial an affidavit from S.B. was for the first time made available to him that claimed S.B. testified falsely at trial. Defendant maintained that according to S.B.'s affidavit both J.B. and S.B., the State's only witnesses to the incidents in question, testified falsely. Defendant therefore asserted that this affidavit established that he was denied his constitutional right to a fair trial. Defendant further alleged that S.B.'s affidavit clearly implied that "coercion" from certain police officers was "instrumental" in persuading defendant's sons to testify falsely *967 and that such testimony led to his convictions.
Attached to defendant's petition was an affidavit from S.B. in which S.B. claimed to have testified falsely at defendant's trial about defendant forcing S.B. and J.B. to drink whiskey. Rather, S.B. asserted in the affidavit that he and J.B. drank the whiskey without defendant's knowledge. Part of the reason S.B. gave for testifying falsely was that he "did not want to be whipped or grounded for sneaking whiskey." S.B. also stated in the affidavit that defendant was wrestling with him and J.B., but was not being rough. S.B. admitted that defendant gave him and J.B. a beer, and further claimed that when J.B. began making murmuring sounds, defendant told him to call 911. S.B. also stated that "[b]efore trial they [the State] had us listen to some tapes to remember what we had said."
The State moved to dismiss defendant's petition, contending that the allegations in the petition did not state grounds upon which relief could be granted and were frivolous and patently without merit. (See Ill.Rev. Stat.1989, ch. 38, par. 122-5.) The trial judge subsequently dismissed the post-conviction petition without an evidentiary hearing, finding that the allegations were frivolous and patently without merit. See Ill.Rev. Stat.1989, ch. 38, par. 122-2.1(a)(2).
Defendant then moved to vacate the trial judge's order dismissing his post-conviction petition. The trial judge reserved ruling on one issue, not raised here, and denied the remaining portions of the motion. Defendant thereafter appealed to the appellate court. On appeal, defendant argued, in part, that the trial judge erred in dismissing his post-conviction petition as frivolous and patently without merit because the allegation in the petition that the State used false testimony to convict him was sufficient to allege that his constitutional rights had been violated and therefore prevent the petition's summary dismissal.
The appellate court affirmed the trial judge's summary dismissal of defendant's post-conviction petition. (No. 4-93-0322 (unpublished order under Supreme Court Rule 23).) Specifically, the appellate court rejected defendant's claim that the alleged use of false testimony by the State was sufficient to prevent summary dismissal of the post-conviction petition. Although the court found that, if true, S.B.'s affidavit would establish he committed perjury, the court nevertheless reasoned that in order for a post-conviction petition to establish a meritorious constitutional claim more than perjury had to be alleged; the petitioner must also allege that the State knowingly used perjured testimony. (See People v. Hickox (1992), 229 Ill. App.3d 454, 458, 170 Ill.Dec. 847, 593 N.E.2d 736; People v. Berland (1983), 115 Ill.App.3d 272, 274-75, 71 Ill.Dec. 291, 450 N.E.2d 979.) The court found that there was nothing in defendant's petition or S.B.'s affidavit that remotely pointed to the State's knowing use of perjured testimony. Therefore, the appellate court determined that the trial judge correctly concluded that defendant's petition lacked the necessary merit for further consideration. This appeal followed. (145 Ill.2d R. 315(a).) The only issue raised by defendant in this appeal is whether his post-conviction petition, alleging that his conviction was based on false testimony, raised a constitutional claim, thereby precluding the petition's summary dismissal.

DISCUSSION
We begin our analysis by restating several tenets of the Post-Conviction Hearing Act (Act) (Ill.Rev.Stat.1989, ch. 38, pars. 122-1 through 122-7). The Act provides a post-conviction remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial. (People v. Brisbon (1995), 164 Ill.2d 236, 242, 207 Ill.Dec. 442, 647 N.E.2d 935; People v. Ramirez (1994), 162 Ill.2d 235, 239, 205 Ill. Dec. 107, 642 N.E.2d 1224; People v. Eddmonds (1991), 143 Ill.2d 501, 510, 161 Ill.Dec. 306, 578 N.E.2d 952.) To survive dismissal at the initial stage of the post-conviction proceeding, the petition need only present the gist of a meritorious constitutional claim. People v. Seaberg (1994), 262 Ill.App.3d 79, 82, 200 Ill.Dec. 25, 635 N.E.2d 126.
Here, defendant argues that a conviction based on false testimony should be held to present a meritorious constitutional claim, *968 regardless of whether the State knew the testimony was false. Defendant urges that a conviction based on false testimony is fundamentally unfair and denies a defendant due process of law. Defendant further contends that the use of false testimony, whether known to the State to be false or not, presents the fact finder with less than the total truth and distorts and compromises the integrity of the judicial process. Defendant acknowledges that cases have required an allegation of knowing use, but contends that there is no justification for the requirement. Defendant argues that the notion that an allegation of knowing use is needed to satisfy the State-action requirement of due process is outdated. Rather, defendant maintains that the use of the State's judicial processes to convict him established the requisite State action needed for a due process violation. Defendant therefore argues that the allegation of false testimony without State knowledge, contained in his post-conviction petition and supported by S.B.'s affidavit, raised a substantial constitutional violation prohibiting the petition's summary dismissal. Defendant appeals seeking a remand for further proceedings, including an evidentiary hearing, so that he may prove his conviction was the result of false testimony.
The State responds that defendant did not raise a constitutional claim cognizable under the Act because the unknowing use of false testimony does not involve sufficient State action to constitute a violation of due process. Rather, the State maintains that the appropriate remedy for the unwitting use of false testimony is through a petition for post-judgment relief under section 2-1401 of the Code of Civil Procedure (Code) (Ill.Rev.Stat.1989, ch. 110, par. 2-1401). The State also cites the need for finality in criminal cases as a reason for the "knowing use" requirement. It further contends that abandoning the "knowing use" requirement will provide an incentive for criminal defendants to convince witnesses to recant their trial testimony in an effort to overturn their convictions. Because the State alleges that no issue of constitutional dimension was raised without an allegation of the State's knowing use of the perjured testimony, it contends that the trial judge properly dismissed defendant's post-conviction petition.
As previously noted, the Act provides a remedy to defendants who allege that substantial violations of their constitutional rights occurred during trial. (Eddmonds, 143 Ill.2d at 510, 161 Ill.Dec. 306, 578 N.E.2d 952.) To establish a constitutional violation entitling a defendant to a review of his conviction, a defendant must show that "there was action by the State inconsistent with fundamental principles of liberty and justice reflecting the community's sense of fair play and decency." People v. Cihlar (1986), 111 Ill.2d 212, 216, 95 Ill.Dec. 297, 489 N.E.2d 859, citing People v. Cornille (1983), 95 Ill.2d 497, 508, 69 Ill.Dec. 945, 448 N.E.2d 857.
This court's precedents, in accord with those of the United State's Supreme Court, have long recognized that a criminal conviction obtained through the knowing use of false testimony constitutes a violation of due process. (Giglio v. United States (1972), 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 108; Napue v. People (1959), 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217, 1221; Mooney v. Holohan (1935), 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791, 794; People v. Jimerson (1995), 166 Ill.2d 211, 223, 209 Ill.Dec. 738, 652 N.E.2d 278; Cihlar, 111 Ill.2d at 218-19, 95 Ill.Dec. 297, 489 N.E.2d 859; People v. Martin (1974), 56 Ill.2d 322, 325, 307 N.E.2d 388; People v. Martin (1970), 46 Ill.2d 565, 567, 264 N.E.2d 147; People v. Gendron (1969), 41 Ill.2d 518, 519, 244 N.E.2d 149; People v. Lagios (1968), 39 Ill.2d 298, 301, 235 N.E.2d 587; People v. McKinney (1964), 31 Ill.2d 246, 247, 201 N.E.2d 431; People v. Alden (1959), 15 Ill.2d 498, 502, 155 N.E.2d 617; People v. Jennings (1952), 411 Ill. 21, 24, 102 N.E.2d 824.) To establish a violation of due process, however, the prosecution need not have known that the testimony was false; it is enough that there was knowledge on the part of representatives or agents of the prosecution. (Cihlar, 111 Ill.2d at 218-19, 95 Ill.Dec. 297, 489 N.E.2d 859; Martin, 56 Ill.2d at 325, 307 N.E.2d 388; Martin, 46 Ill.2d at 567, 264 N.E.2d 147.) Moreover, this court has found that under certain circumstances the State's failure to adequately investigate the qualifications *969 of a government witness, where the information would have established the witness was lying, created sufficient State involvement to establish a violation of due process. (Cornille, 95 Ill.2d at 513, 69 Ill.Dec. 945, 448 N.E.2d 857.) A due process violation may also be found "`when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.'" See Giglio, 405 U.S. at 154, 92 S.Ct. at 766, 31 L.Ed.2d at 108, quoting Napue, 360 U.S. at 269, 79 S.Ct. at 1177, 3 L.Ed.2d at 1221.
While it is clear that the State's knowing use of false testimony raises an issue of constitutional dimension, this court has not squarely addressed whether actual knowledge that the testimony was false is required in order to raise a constitutional claim. Different districts of our appellate court, as well as different divisions of the First District of the appellate court, are divided on the issue. A number of cases have held that an allegation of "knowing use" is required in order to raise a constitutional issue. (People v. Winchel (1st Dist.3d Div.1987), 159 Ill.App.3d 892, 904, 111 Ill.Dec. 661, 512 N.E.2d 1298; People v. Bailey (1st Dist. 5th Div.1986), 141 Ill.App.3d 1090, 1098, 96 Ill.Dec. 129, 490 N.E.2d 1334; People v. Lovitz (2d Dist.1984), 127 Ill.App.3d 390, 395, 82 Ill.Dec. 356, 468 N.E.2d 1010; People v. Berland (1st Dist. 4th Div.1983), 115 Ill.App.3d 272, 274, 71 Ill.Dec. 291, 450 N.E.2d 979; People v. Oswalt (5th Dist.1975), 26 Ill.App.3d 224, 227, 324 N.E.2d 666; see also 21A Am.Jur.2d Criminal Law § 784, at 229-30 (1964) ("The rule that perjured testimony amounts to a violation of due process requires that the falsity of the evidence must have been known to the prosecution or representatives of the state").) The doctrine is generally based on the notion that only direct State action may establish a due process violation and on a concern for the maintenance of finality in criminal proceedings.
Other cases in Illinois have, however, taken the position that a constitutional issue is raised despite the failure to claim that the use of false testimony was with the State's knowledge. (See People v. Cihlar (1st Dist.2d Div.1984), 125 Ill.App.3d 204, 211-12, 80 Ill.Dec. 513, 465 N.E.2d 625, aff'd on other grounds (1986), 111 Ill.2d 212; 95 Ill.Dec. 297, 489 N.E.2d 859; People v. Bland (1st Dist.2d Div.1979), 67 Ill.App.3d 716, 720-21, 24 Ill.Dec. 222, 384 N.E.2d 1380; People v. Hilliard (1978), 65 Ill.App.3d 642, 647, 22 Ill.Dec. 121, 382 N.E.2d 441; People v. Preston (1st Dist.5th Div.1978), 60 Ill.App.3d 162, 180, 17 Ill.Dec. 300, 376 N.E.2d 299; People v. Shannon (1st Dist.2d Div.1975), 28 Ill. App.3d 873, 878, 329 N.E.2d 399; People v. Sims (4th Dist.1972), 4 Ill.App.3d 878, 880, 282 N.E.2d 16; see also Riley v. State (1977), 93 Nev. 461, 462, 567 P.2d 475, 476; People v. Yamin (1965), 45 Misc.2d 407, 416-17, 257 N.Y.S.2d 11, 22.) The rationale for this rule was best expressed in Shannon. There, the appellate court applied a more expansive definition of the concept of State action, citing Shelley v. Kraemer (1948), 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (use of the State's judicial process by private persons to enforce racially restrictive covenants is State action violating due process), and held that the use of the State's judicial process to convict a defendant based on the use of false testimony constituted State action, whether the State knew the testimony was false or not. Shannon, 28 Ill.App.3d at 878, 329 N.E.2d 399.
We also note that Federal courts are split on the issue of whether the knowing use of false testimony is required to raise a constitutional issue. The majority of Federal courts hold, however, that it is only the knowing and intentional use of perjured testimony by prosecuting authorities that raises a constitutional issue. See Jacobs v. Singletary (11th Cir.1992), 952 F.2d 1282, 1287 n. 3; Smith v. Wainwright (11th Cir.1984), 741 F.2d 1248, 1257; United States ex rel. Burnett v. Illinois (7th Cir.1980), 619 F.2d 668, 674; Burks v. Egeler (6th Cir.1975), 512 F.2d 221, 224-29; Elliott v. Beto (5th Cir.1973), 474 F.2d 856, 857; Reed v. United States (10th Cir.1971), 438 F.2d 1154, 1155; Hoffa v. United States (E.D.Tenn.1972), 339 F.Supp. 388, 392-93; Imbler v. Craven (C.D.Cal. 1969), 298 F.Supp. 795, 807-08; United States v. Jakalski (7th Cir.1956), 237 F.2d 503, 504-05; Taylor v. United States (8th Cir.1956), 229 F.2d 826, 832; see generally Annotation, 3 L.Ed.2d 1991, 1994 (and cases cited therein); see also Annotation, 2 L.Ed.2d 1575, 1583-84 (and cases cited therein); *970 but see United States v. Biberfeld (3d Cir.1992), 957 F.2d 98, 102; Sanders v. Sullivan (2d Cir.1988), 863 F.2d 218; United States v. Wallach (2d Cir.1991), 935 F.2d 445, 456; United States ex rel. Montgomery v. Ragen (N.D.Ill.1949), 86 F.Supp. 382, 390; Jones v. Kentucky (6th Cir.1938), 97 F.2d 335, 338.
With this background in mind, we find that the better rule is the one expressed in those cases requiring an allegation of knowing use of false testimony in order to establish a constitutional violation. In the absence of an allegation of the knowing use of false testimony, or at least some lack of diligence on the part of the State, there has been no involvement by the State in the false testimony to establish a violation of due process. (See Cornille, 95 Ill.2d at 513, 69 Ill. Dec. 945, 448 N.E.2d 857.) Without such involvement, the action of a witness falsely testifying is an action of a private individual for which there is no remedy under the due process clause.
Moreover, we find that defendant's reliance on Shelley as support for his claim that the involvement of the State's adjudicatory processes is alone sufficient State action to establish a violation of due process is misplaced. Shelley concerned a State court's enforcement of a racially restrictive covenant in a lease between private parties. The Supreme Court found that the court's enforcement of the covenant constituted State action, thus violating the equal protection clause of the fourteenth amendment. "It is clear that but for the active intervention of the state courts, supported by the full panoply of state power, petitioners would have been free to occupy the properties in question without restraint." (Shelley, 334 U.S. at 19, 68 S.Ct. at 845, 92 L.Ed. at 1183.) In finding State action, the Court also asserted that "these are cases in which the States have made available to such individuals the full coercive power of government to deny to petitioners, on the grounds of race or color, the enjoyment of property rights in premises which petitioners are willing and financially able to acquire and which the grantors are willing to sell." Shelley, 334 U.S. at 19, 68 S.Ct. at 845, 92 L.Ed. at 1183-84.
The factor which distinguishes Shelley from the present case is that in Shelley the State courts knowingly allowed individuals to use the judicial system to deny petitioners their constitutional rights. Here, there was no such knowing use. Therefore, Shelley is inapplicable to the present case. Moreover, this court has noted that courts and commentators have viewed the Shelley Court's finding of State action with suspicion. People v. DiGuida (1992), 152 Ill.2d 104, 125, 178 Ill. Dec. 80, 604 N.E.2d 336, citing L. Tribe, American Constitutional Law 1156, 1168 (1978) (expressing the view that the Court's finding of State action in Shelley would require that all private agreements conform to constitutional standards because the parties to the agreement may later seek judicial enforcement of the agreement).
Our ruling in this case does not leave defendants who claim that their convictions are based on perjured testimony without a remedy. As this court has noted, section 2-1401 of the Code provides a basis for obtaining relief from judgments based on false testimony. (People v. Steidl (1991), 142 Ill.2d 204, 253, 154 Ill.Dec. 616, 568 N.E.2d 837; People v. Jennings (1971), 48 Ill.2d 295, 298, 269 N.E.2d 474; People v. Lewis (1961), 22 Ill.2d 68, 70, 174 N.E.2d 197.) To obtain relief under this section, a defendant is not required to establish a constitutional violation or, in the case of false testimony, that the false testimony was knowingly used by the prosecution. (Steidl, 142 Ill.2d at 253-55, 154 Ill.Dec. 616, 568 N.E.2d 837; Lewis, 22 Ill.2d at 70-71, 174 N.E.2d 197; see also People v. Hilliard (1978), 65 Ill.App.3d 642, 647, 22 Ill.Dec. 121, 382 N.E.2d 441.) Although defendant could have pursued a remedy under section 2-1401, he instead chose to file a petition for post-conviction relief under the Act. Defendant, however, claims that if we find that the appropriate remedy for his claim was though a petition under section 2-1401, equity required the trial judge to treat his motion as a motion under section 2-1401. Because defendant raises this argument for the first time in his reply brief in this court, the issue has been waived. 145 Ill.2d R. 341(e)(7).

*971 CONCLUSION
For the reasons stated, we hold that the trial judge did not err in summarily dismissing defendant's post-conviction petition without an evidentiary hearing. Accordingly, we affirm the decision of the appellate court, upholding the trial court's summary dismissal of the defendant's post-conviction petition.
Affirmed.
Justice HARRISON, dissenting:
Patrick Brown sits in prison today based solely on evidence that may have been fabricated by the prosecution's witnesses. Although there is substantial precedent for the majority's holding that the use of perjured testimony does not offend the constitution unless prosecutors knew it was false when they presented it to the jury, I cannot adhere to this view. Rather, I agree with the position taken by the appellate court in People v. Shannon (1975), 28 Ill.App.3d 873, 878, 329 N.E.2d 399, which held that
"the use of the State's judicial process to enforce a right of the People, the violation of which is based upon the perjured testimony of a private individual, constitutes State action whether or not the State knew that the testimony was perjured. Known to the State or not, the use of its judicial process to convict and imprison on perjured testimony is a miscarriage of justice which is abhorrent to fundamental fairness and as such is intolerable. Perjury is the mortal enemy of justice, and the battle between them must be waged at every level, including the constitutional." (Emphasis added.)
Because Brown's petition for post-conviction relief did raise a constitutional question, the circuit court was wrong in summarily dismissing the petition without an evidentiary hearing. At a minimum, the circuit court should have treated the petition as having been brought under section 2-1401 of the Code of Civil Procedure (Ill.Rev.Stat.1989, ch. 110, par. 2-1401). (See People v. Gandy (1992), 227 Ill.App.3d 112, 169 Ill.Dec. 165, 591 N.E.2d 45.) Although Brown did not expressly invoke that statute in the circuit court, he was proceeding pro se and was not afforded the assistance of counsel. I realize that pro se litigants are normally held to the same standard as everyone else, but I regard this as a singularly inappropriate time to invoke principles of waiver. To hold that Brown is now barred from relief because of a technical procedural error, as my colleagues do, simply serves to compound one injustice with another.
The circuit and appellate courts should be reversed, and the cause should be remanded for a hearing on Brown's petition. Accordingly, I dissent.
Justices McMORROW and NICKELS join in this dissent.